### DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

---

[No. 13404. Department One. December 26, 1916.]

## D. E. GILMAN, *Appellant*, v. W. B. BRUNTON *et al.*, *Respondents.*[1]

SPECIFIC PERFORMANCE—CONTRACTS—DESCRIPTION—CERTAINTY. An agreement for the exchange of properties, describing a tract as "48 acres more or less bounded upon the north by Cedar creek, situated about one mile east of Etna, Wash.," is too indefinite for specific performance, notwithstanding the further mention that it was the "same property conveyed to the party of the first part by W. Tate and wife in 1912," where the Tate deed was not delivered with the contract; since parol evidence would be necessary to assist in identifying the land.

SAME—DEFENSES—TENDER AND ABILITY TO PERFORM—EVIDENCE—SUFFICIENCY. Specific performance of a contract for an exchange of properties is properly denied, where plaintiff's tender of his deed was insufficient as being outside the chain of title, and he failed to furnish an abstract within the time agreed upon, although demanded, and an abstract furnished at the trial showed transactions that were hardly in good faith, and that plaintiff had not been ready, able and willing to perform on his part.

SAME—DEFENSES — EQUITABLE DEFENSES — UNCONSCIONABLE CONTRACT. Specific performance will not be decreed against parties who were induced by fraud to give property of the value of $11,100 for property not worth more than $7,700, although they made their own examination; since a court of equity will not lend its aid to enforce an unfair contract, leaving the party to his remedy in an action at law for damages.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered July 27, 1915, dismissing an

[1] Reported in 161 Pac. 835.

action for specific performance, after a trial on the merits before the court. Affirmed.

*Walter G. Hayes* and *Miller & Wilkinson*, for appellant.

*McMaster, Hall & Drowley*, for respondents.

PER CURIAM.—On November 1, 1913, the plaintiff and defendants entered into the following agreement:

"This agreement, made and entered into this 1st day of November, 1913, by and between W. B. Brunton and Opal M. Brunton, husband and wife, hereinafter known as the party of the first part, and W. L. Twitchell, hereinafter known as the party of the second part, witnesseth:

"Whereas, W. B. Brunton and Opal M. Brunton, parties of the first part, are the owners in fee simple of the following bounded and described property, situated in the county of Clarke, state of Washington, 48 acres, more or less, bounded on the north by Cedar creek and situated about one mile east of Etna, Wash., said property being the same property conveyed to the party of the first part by W. Tate and wife in 1912.

"Whereas, W. L. Twitchell, party of the second part, is the owner in fee simple of the following described real and personal property, situated in the county of Morrow, state of Oregon: 360 acres of land in section 3, township 3 south of range 26 east of the W. M. Also the following personal property: 4 horses, 2 sets of harness; 1 grain drill, 1 four section harrow, one 2 bottom plow, 1 walking plow, 1 header, 2 wagons, fanning mill;

"Whereas, the parties of the first part are anxious to, and have this day offered to exchange their land herein described, for the land and personal property of the party of the second part herein described, said property of the parties of the first part to be subject to a mortgage of $800 with interest paid up to date. Said property of the party of the second part herein described to be subject to an incumbrance of $8,100 which the parties of the first part agree to assume; said incumbrance to be in the form of a contract note; said note to be paid as follows: One half of all the grain raised to be delivered to the Heppner Warehouse & Milling Co.'s warehouse, at Heppner, Ore., free and clear from all expense, and

to be sold and the proceeds to apply on said note. First: the interest to be paid, and the balance applied on the principal. Said note to draw interest at the rate of 8% per annum on the sum of $3,000 which is now a *lean* on said property, and at the rate of 6% per annum on the balance of $5,100.

"Whereas, the party of the second part is anxious to accept the terms of and exchange properties as offered by the parties of the first part, to make such trade.

"In consideration of the premises and the agreements of the parties herein contained, and of ten ($10) dollars, paid by each of them to the other this day to bind the bargain, the receipt of which sum is hereby acknowledged, we do hereby undertake, promise and agree to exchange our respective properties as described herein, one for the other and the parties of the first part agree to furnish an abstract of title of their lands within 10 days from the date hereof, showing a fee simple title, subject to the incumbrance herein mentioned, and they further agree to give a warranty deed to the party of the second part for said land, subject to said incumbrance to be assumed by the party of the second part. The party of the second part agrees to execute and deliver to the party of the first part a warranty deed for said above described property conveying the same in fee simple, subject to the above mentioned incumbrance to be assumed by the party of the first part. The party of the second part also agrees to furnish an abstract of title of his lands within 10 days from the date hereof, showing a fee simple title, subject to the incumbrance herein mentioned.

"It is further understood and agreed by and between the parties hereto, that said deeds of the parties herein shall be executed and tendered to the other party within 30 days from the delivery of the abstracts, and each of the parties hereto undertake, promise and agree to fully consummate said exchange of properties within 30 days from the date of receiving said abstract, and neither party hereto shall have the right or authority to withdraw from, or refuse to complete said exchange of properties for any cause whatever, except where the title to some of the property to be exchanged shall be objected to as unmerchantable, and such objections, if any, shall be reduced to writing and personally served upon the other party, his agent or attorney, and if any objections are found to the title, the owner of the land is hereby given

30 days, in which to clear such objections, and if cleared the exchange of properties shall be consummated within 10 days thereafter, and this contract shall be fully consummated.

"The time in which each of the parties are to perform the acts and things herein agreed upon is hereby declared to be of the essence of this agreement.

"In witness whereof the parties have hereunto set their hands and seals in duplicate the day and year first above written.            W. B. Brunton,    (Seal)

"Witness.                        Opal M. Brunton, (Seal)

"P. E. Alvord.                  D. E. Gilman,    (Seal)"

The parties did not exchange deeds nor do anything else in furtherance of the contract, except that, about November 15, 1913, defendants entered into possession of the Morrow county land and undertook its cultivation. Coming to a realization that they had not received what they bargained for, the defendants, about September 1, 1914, abandoned the Oregon property, moved back to their Clarke county farm, and refused to carry out the contract of exchange. The plaintiff at once brought an action for specific performance. From a decree dismissing the action, plaintiff appeals.

The contract was so indefinite and uncertain in some of its terms that appellant found himself under the necessity of including an action for its reformation as a preliminary to its specific performance. The agreement recites that one W. L. Twitchell, as the owner of the fee simple title to the Oregon land, is one of the contracting parties, while the agreement with the Bruntons is executed by D. E. Gilman instead of by Twitchell. The Oregon land is also described as 360 acres in "Section 3, Twp. 3 South of Range 26, East of W. M.," while in fact but 120 acres of the land involved lie in section 3, and the balance of 240 acres lies in section 4 of the same township and range. It may be conceded that the appellant was entitled to a reformation in these particulars, since the evidence showed that respondents were put in possession of the right lands and that they were informed that appellant was the real owner, although the record title was

at the time in the name of Twitchell.   But, conceding the foregoing defects to have been duly corrected so as to warrant specific performance, the agreement is still defective in that the Brunton land is not sufficiently described to admit of its identification without resort to parol testimony.   The description is as follows:

"The following described property situated in Clarke county, state of Washington, 48 acres more or less bounded upon north by Cedar creek and situated about one mile east of Etna, Wash., said property being the same property conveyed to the party of the first part by W. Tate and wife in 1912."

While it is the law that a reference in a contract or deed to another instrument which contains a description of the property justifies the examination of the two instruments together for the purpose of identifying the particular property referred to, the description herein does not come within the rule.   The reference is not to an instrument containing a sufficient description, but merely declares the property is "the same property conveyed to the party of the first part [Bruntons] by W. Tate and wife in 1912."   Parol evidence would be necessary to assist in determining what description was to be incorporated in the decree for specific performance.   In *Thompson v. English*, 76 Wash. 23, 135 Pac. 664, in a case involving a somewhat similar description, this court said:

"The description of the property as contained in the contract was, 'Seventy-nine acres in section 30, township 2 N., Range 3, E. W. M., Clarke Co., Wash.   Owner, A. E. English.'   It will be observed that this description does not specify which 79 acres in section 30 was intended.   To ascertain this fact, resort must be had to oral testimony.   The description given cannot be applied to any definite property."

The fact that appellant was in possession of the deed from the Tates to the Bruntons in which the Brunton property was correctly described would be immaterial, in view of Brunton's testimony that he did not deliver the deed with the contract, and Gilman's testimony that he did not know how or when

he came into possession of the Tate deed. We hold that the description of the Clarke county land of the Bruntons was too indefinite for specific performance.

Further, we do not think appellant showed any title in himself such as a court of equity would compel the respondents to receive. The respondents denied the allegation of the complaint that appellant was the owner of the property. Appellant testified he was the owner, but the court did not receive the evidence as proper proof of title. Appellant introduced in evidence an abstract of title to the property, which was admitted only for the purpose of showing tender of the abstract and not as proof of title. But if the fact were otherwise, the abstract would not aid the appellant. The appellant testified that he tendered a deed for the land from Twitchell to Brunton some time in August or September, 1913. According to the abstract of title, a conveyance of this land is shown as having been made by Twitchell to Gilman on March 19, 1913, thus showing that, at the time Gilman tendered the Twitchell deed, the property stood in the name of Gilman himself. This was not a valid tender. This abstract discloses further peculiarities. In March, 1913, Gilman conveyed the land in controversy to Twitchell for an alleged consideration of $9,000, and at the same time, Twitchell gave a mortgage back for $3,000 as a part of the same transaction. On the same date, Twitchell redeeded the property to Gilman subject to the $3,000 mortgage. Then, on October 20, 1913, after the land had passed out of Twitchell's hands, the latter gave another mortgage to Gilman for $6,000. This latter mortgage was taken by Gilman at the time he was negotiating with respondents for an exchange of properties. The transactions with Twitchell hardly seem *bona fide*, but rather as if entered into for the purpose of giving the property a fictitious valuation. It is a significant fact also that the Twitchell $6,000 mortgage to Gilman was not satisfied until September 12, 1914, which was about two weeks after the tender and refusal of the Twitchell

deed to Brunton.  In this connection, we might add that an abstract of title was never furnished by appellant to respondents until the trial, although the contract called for such delivery within ten days from date, and one provision of the contract was that "The time in which each of the parties are to perform the acts and things herein agreed upon is hereby declared to be of the essence of this agreement."  The appellant has failed to show that he was ready, able and willing to perform.  The evidence shows respondents demanded the abstract several times, in order to ascertain the condition of the title and close up the transaction.  At the time the respondents abandoned the exchange of properties, some ten months after entering into the contract therefor, the appellant had not furnished the abstract, and the deed tendered by him was insufficient as being without the chain of title.  It is true the appellant, at the time of instituting this action, tendered in court a deed from himself to the respondents, but it came too late to constitute performance of a contract which made time of the essence.

As an affirmative defense to this action for specific performance, the respondents set up that they had been misled by the representations of appellant's agent that the Gilman farm was worth $30 per acre, that they were ignorant of values in that locality, and that they informed such agent they were relying on his knowledge and representations.  Appellant replied that the lands were fully worth that value, and further, that respondents went into possession after having made a full inspection of the lands.  The evidence shows that respondent W. B. Brunton visited the lands and spent two days in the examination of them prior to signing the contract.  At the time of his visit, ten acres were pointed out to him as rocky and unfit for cultivation, but nothing was said to him as to the rocky character of the remainder of the soil.  After respondents went into possession and undertook to plow the land, they discovered that the land was full of rock which were not apparent on the casual inspection of the land.

Neighboring farmers testified as to the rocky character of the soil on this land, that it was poor land and not suitable for farming purposes. The evidence on the part of appellant was to the effect that the land was worth from $20 to $30 per acre, the latter figure as a basis for trading purposes. The witnesses in behalf of respondents testified the land was worth only from $10 to $20 per acre. Accepting from this evidence $20 per acre as a fair valuation, the land could not have been worth more than $7,200, which, with $500 worth of personal property included in the trade, would give $7,700 as the consideration. Under the terms of the contract, respondents were to pay $8,100 and also throw in their Clarke county farm upon which they put a valuation of $3,500, but for which appellant had negotiated a sale at $3,000. Accepting the latter figure as a fair valuation, the contract shows that respondents were to give $11,100 for property worth at the most no more than $7,700. The evidence shows that the respondents were utterly ignorant of the value of the Oregon lands, and that they relied on the representations of appellant's agent as to such values, and so informed the agent. The agent represented that no lands in Morrow county could be bought for less than $30 per acre, and that worse lands than these had been sold for $30 and $35 per acre. The agent assumed to have a knowledge of the value of Morrow county lands, and his representations cannot be relegated to the category of mere opinions as to value.

Nor can it be said that respondents are estopped by their examination of the lands to deny appellant's right to specific performance. This is not a case of rescission of an executed contract, in which courts are slow to grant relief where the proof of fraud is not clear and convincing and the complaining party has already consummated the contract after an inspection of the land. It is a case where resort is had to a court of conscience to enforce performance of an executory contract which would impose an inequitable burden upon one

of the parties. If the contract is shown to be unconscionable, inequitable and unfair, it is the duty of the court to deny enforcement, although the evidence might not be sufficient to justify rescission in the case of an executed contract. Taking the evidence most favorable to the appellant, it discloses that he is seeking to compel respondents to pay for property more than $3,000 in excess of its fair value. Even if there may not have been actionable fraud on the part of appellant, still a court of conscience will not lend its aid to the enforcement of a contract which is manifestly unfair. If the appellant deems himself injured, there remains to him his remedy in an action at law for damages for breach of contract. The law on this subject is well expressed by one of the standard text books as follows:

"So, a court of equity will not lend its aid to enforce a contract which is in any way unfair, inequitable or unconscionable. And gross inadequacy of consideration may be sufficient to justify the court in refusing a decree for specific performance even though there is no such fraud or the like as would require a cancellation. The contract may be perfectly legal, and yet it will not be specifically enforced if it is unreasonable or unconscionable, or if its enforcement will work a hardship or injustice to one of the parties." Elliott, Contracts, § 2305.

We think that the contract here sought to be enforced is indefinite in its description of the Clarke county land, that the contract is unconscionable, inequitable and unfair to the respondents, and that appellant was in default in tendering due performance on his part. Any one of the foregoing defects is sufficient of itself to defeat the action. The decree of the trial court is affirmed.