[No. 35467.   Department Two.   November 17, 1960.]

JOHN M. NELSON *et al., Appellants,* v. DOROTHY FRIEDA NELSON, *Respondent.*[1]

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for appellants.

*Leo W. Stewart,* for respondent.

HILL, J.—The plaintiffs have invoked the equitable remedy of specific performance of a contract for the exchange of properties. The six judges to whom this case has now been presented (one trial judge and five appellate court judges) are all agreed that it would be unconscionable to grant the relief requested.

■   It is well established that a contract may be perfectly legal, and not subject to rescission, yet a decree of specific performance will be denied if the result is unconscionable, inequitable and unfair. See annotation "Specific performance of a contract as a matter of right," 65 A. L. R. 7 to 110 (1930).

[1] Reported in 356 P. (2d) 730.

■ The circumstances of the present case, which in their totality have seemed unconscionable to the trial court and to this court are: The plaintiff, Robert E. Levy (a graduate of two law schools and admitted to practice in Mississippi, who has been engaged in buying and selling real estate for more than thirty years), sold, on February 9, 1957, an old residence in Seattle and the furnishings therein (hereinafter called the Boylston Avenue property), in which he had a substantial interest, to the defendant, Dorothy F. Nelson (a practical nurse), for $12,500.00, payable $2,931.67 down and the balance ($9,568.33) in monthly payments of $125 each including interest. (Levy and his associates had bought this place about a month earlier for five or six thousand dollars cash. They filled it up with tenants and then sold it to the defendant as income property.)

The defendant took possession March 1, 1957, under the terms of the earnest money receipt; but she was not given a contract until December 16, 1957, by which time she had paid $3,667.11 to Levy and his associates, reducing the unpaid balance to $8,832.89.

In March of 1958, the Seattle fire department took the position that the use being made of the Boylston Avenue property and the type of occupancy were illegal. The trial court was convinced, as are we, that Levy (with his long experience in handling properties of this kind) knew, when he and his associates sold the Boylston Avenue property to the defendant, that the use then being made of the premises —for apartment purposes—was not permissible.

The defendant, by the expenditure of between $1,000 and $1,500 for rewiring, replacing electric plates with stoves, and for other improvements, was able to secure permission from the city authorities to operate the premises as a rooming house. She had further improved the house with a new front porch at a cost of $2,000, for which amount she was obligated but had not paid at the time of trial.

By January 30, 1959, she had reduced the balance due on her contract to $7,749.91, having then paid to Levy and his associates $4,750.09 on the purchase price. In addition to

this, she had expended or had incurred obligations in the sum of between $3,000 and $3,500 for the improvement of the property, making a total investment of approximately $8,000 and an equity of $4,750.09 based on the $12,500 purchase price. On that date Levy engineered a deal whereby the defendant was to exchange her equity in the Boylston Avenue property and its furnishings for an equity in what we shall refer to as the North 82nd Street property, which also included furnishings, and in which latter property Levy had an undivided half interest. The other plaintiff, John M. Nelson, and his wife had the other undivided half interest.

Earnest money receipts, covering each property, were prepared by Levy while the parties waited in the defendant's kitchen. A purchase price of $10,500 was placed on each property; and Levy and Nelson, who were acquiring the defendant's equity in the Boylston Avenue property, were, by the terms of the receipt covering the purchase of that property, to pay in cash the difference between $10,500 and the balance on the defendant's contract which was, as indicated, $7,749.91. The amount of this cash payment was not stated. (It is argued, on behalf of the defendant, that this was to keep the defendant from realizing the small amount she was receiving; but, as the plaintiffs point out, it was readily computable at $2,750.09.)

The defendant, by the other earnest money receipt, agreed that her equity in the Boylston Avenue property—here explicitly stated to be $2,750.09—was to be the down payment on the North 82nd Street property, and she agreed to pay the balance of $7,749.91 at not less than $75 a month. (Levy and Nelson had offered the North 82nd Street property for $8,500 and $8,950 shortly before January 30, 1959; after this action had been commenced, they sold the North 82nd Street property for $9,500.)

The defendant was thus obligated, by the earnest money receipts, to exchange with Levy and Nelson her equity in the Boylston Avenue property—on which she had paid $4,750.09 to Levy and his associates and on which she had expended or incurred obligations for an additional amount

in excess of $3,000.00—for a $2,750.09 equity in the North 82nd Street property at what was probably an inflated valuation.

The defendant, feeling that the plaintiffs had taken advantage of her, refused to go through with the exchange and retained possession of the Boylston Avenue property. The plaintiffs then brought this action to compel her to sell the Boylston Avenue property and to buy the North 82nd Street property on the theory of two separate contracts. The trial court concluded, and we are in entire accord, that this was but one transaction and but one contract and that it was a contract for the exchange of interests in the Bolyston Avenue property and the North 82nd Street property.

Against the trial court's conclusion that this contract was unconscionable and should not be enforced, the plaintiffs argue that they are entitled to a decree of specific performance, as a matter of right, since there is no fraud or fiduciary relationship established. It is urged that the earnest money receipts are clear and unambiguous; that the defendant could not have been misled thereby, and that no more is involved here than an attempt by the defendant to repudiate a bad bargain.

We are, however, convinced that there is more involved than a bad bargain. Not only was there a misunderstanding by the defendant, as to the amount of her equity in the Boylston Avenue property, but there was an "overkeenness" (a most expressive word cribbed from *Kirkpatrick v. Pease* (1907), 202 Mo. 471, 101 S. W. 651) on the part of the plaintiff Levy, whetted by his expressed intention "to get even with" the defendant.

Levy included in the earnest money receipt, covering the Boylston Avenue property, certain warranties by the defendant relative to police and fire department actions. When the propriety and the validity of such warranties were challenged at the trial, the plaintiffs abandoned any claim to their inclusion in the transaction and offered to accept the Boylston Avenue property "as is." This gambit impressed the trial court as being a covinous contrivance.

In *Gilman v. Brunton* (1916), 94 Wash. 1, 161 Pac. 835, the trial court had, as here, dismissed an action for specific performance. We affirmed, saying, *inter alia* (p. 8):

"Nor can it be said that respondents are estopped by their examination of the lands to deny appellant's right to specific performance. This is not a case of rescission of an executed contract, in which courts are slow to grant relief where the proof of fraud is not clear and convincing and the complaining party has already consummated the contract after an inspection of the land. It is a case where resort is had to a court of conscience to enforce performance of an executory contract which would impose an inequitable burden upon one of the parties. If the contract is shown to be unconscionable, inequitable and unfair, it is the duty of the court to deny enforcement, although the evidence might not be sufficient to justify rescission in the case of an executed contract. Taking the evidence most favorable to the appellant, it discloses that he is seeking to compel respondents to pay for property more than $3,000 in excess of its fair value. Even if there may not have been actionable fraud on the part of appellant, still a court of conscience will not lend its aid to the enforcement of a contract which is manifestly unfair. If the appellant deems himself injured, there remains to him his remedy in an action at law for damages for breach of contract. The law on this subject is well expressed by one of the standard text books as follows:

" 'So, a court of equity will not lend its aid to enforce a contract which is in any way unfair, inequitable or unconscionable. And gross inadequacy of consideration may be sufficient to justify the court in refusing a decree for specific performance even though there is no such fraud or the like as would require a cancellation. The contract may be perfectly legal, and yet it will not be specifically enforced if it is unreasonable or unconscionable, or if its enforcement will work a hardship or injustice to one of the parties.' "

Being satisfied that the contract in the present case, like that in *Gilman v. Brunton, supra,* was "unconscionable, inequitable and unfair," and works an "injustice to one of the parties," we affirm the trial court's dismissal of the action to compel its specific performance.

A multiplicity of supporting citations adds little to a case of this character, for, as we said in *Voight v. Fidelity Inv. Co.* (1908), 49 Wash. 612, 614, 96 Pac. 162 (another case in which we affirmed the trial court's refusal to grant specific performance)

" . . . the decision of controversies of this character must of necessity depend largely upon the circumstances surrounding each particular case. The cases are of equitable cognizance and the rules governing them must be more or less flexible. . . ."

Moreover, since we hold that the two earnest money receipts were part of one exchange transaction, the plaintiffs, by their sale of the North 82nd Street property, have placed it out of their power to perform the contract. The contract must be enforced according to its terms or not at all. *Schmidt v. Barr* (1929), 333 Ill. 494, 165 N. E. 131, 65 A. L. R. 1.

The judgment appealed from is affirmed.

WEAVER, C. J., FINLEY, ROSELLINI, and OTT, JJ., concur.