[No. 12553. Department One. November 13, 1915.]

PASCO FRUIT LANDS COMPANY et al., *Respondents*, v.
EDWARD TIMMERMANN et al., *Appellants*.[1]

WATERS AND WATER COURSES—IRRIGATION — CONTRACTS — FRAUD—EVIDENCE—SUFFICIENCY. Fraud in representing that eighteen inches of water was sufficient to irrigate a tract of land is not shown by evidence that this was a mistaken conclusion by the water company, where it was concurred in by numerous parties who had investigated the matter.

SAME—IRRIGATION—CONTRACTS—SUFFICIENCY OF SUPPLY—EVIDENCE—SUFFICIENCY. A finding that eighteen inches of water was sufficient to irrigate a tract of land is not sustained by the evidence, and will be set aside on appeal, where it was based on the "estimate" of a witness, rather than an actual measurement, and numerous witnesses who qualified as experts testified that it was insufficient and that thirty inches was needed to farm successfully.

SAME — IRRIGATION — CONTRACTS — CONSTRUCTION. A contract for water rights to irrigate arid land, agreeing to convey one-half the tract in consideration of a water supply "to the extent of one and one-half acre feet per year, or so much thereof as shall be required

[1]Reported in 152 Pac. 675.

for irrigating," entered into under the mistaken conclusion that the supply would be sufficient to reclaim the land retained, will be construed as an undertaking to furnish sufficient water to reclaim the land, where the agreed upon amount was insufficient and practically of no value and an entirely inadequate consideration for the land conveyed.

Specific Performance—Contracts Enforcible—Inequality—Inadequacy of Consideration. Specific performance of a contract to convey land in consideration of a specified water supply for irrigation, entered into upon the representation that the supply would be adequate to reclaim the land retained by the vendor, will not be decreed where the contract was unequal, and it would work a hardship and the consideration is entirely inadequate, although inadequacy of consideration is not alone sufficient ground for refusal to decree specific performance.

Waters and Water Courses—Irrigation—Lien for Charges. A lien for unpaid water rates for the irrigation of arid land will not be decreed where the contract was unconscionable and upon an entirely inadequate consideration.

Appeal—Briefs—Striking — Discourteous Language. Upon motion to strike appellants' brief, which was discourteous to the trial judge and deserved more than censure, appellants will be penalized, on reversing the judgment, by denying costs for printing the brief, rather than by granting the motion and involving delay and additional costs.

Appeal from a judgment of the superior court for Franklin county, Kauffman, J., entered June 1, 1914, in favor of the plaintiffs, in an action for specific performance, tried to the court. Reversed.

*H. B. Noland* and *E. A. Davis*, for appellants.

*Driscoll & Leonard* and *Richards & Fontaine*, for respondents.

Morris, C. J.—Appellant Timmermann and wife were the owners of 148 acres of land near the city of Pasco. In March, 1910, they entered into a contract with the respondent companies to convey to them one-half of this land in exchange for a water right of eighteen acre inches for the remaining half, and to pay an annual maintenance charge of $5 per acre, which was to become a lien upon the land if unpaid.

The conveyance was to be made as soon as the respondents should convey to appellants the water right for the seventy-four acres retained by them. This contract contemplated the construction of an irrigation system to cover these and other lands. Appellants paid the maintenance charge upon the seventy-four acres retained by them for the year 1911, but refused to pay for the years 1912 and 1913, and refused to convey the seventy-four acres as agreed in the contract, giving as the reason therefor that they had discovered eighteen acre inches to be an insufficient supply for the reclamation of the land.

Upon the continued refusal of the appellants to complete the contract, the respondents commenced this action to secure a specific performance of the contract to convey, and to establish their lien upon the land retained by the appellants for the accrued maintenance charges for the years 1912 and 1913. Issues raised by appellants' answer were that the respondents had not tendered a water right of any value, and that the contract had been procured by the misrepresentation of respondents that eighteen inches was a sufficient supply to reclaim the lands in question.

The testimony taken at the trial was almost entirely on the question whether eighteen inches was a sufficient water supply. The trial court, reaching the conclusion that it was, entered an order decreeing the specific performance of the contract to convey and declaring the lien of respondents on the land retained by the appellants.

The questions raised by the appeal for our determination may be briefly stated to be, First: Was there fraud in the making of the contract? Second: Is the finding that eighteen inches is an adequate supply and valuable water right sustained by the evidence? Third: Was the tender of an eighteen-inch water right by the respondents a sufficient compliance with the contract, or must they tender a sufficient supply if eighteen inches be found insufficient? Fourth: Is the failure to tender an adequate water supply ground for re-

fusal to order the specific performance of the contract to convey?

The trial court did not pass upon the question of fraud on the part of respondents, since the finding that the water supply was sufficient made unnecessary a determination of the issue of fraud. However, as we have reached a different conclusion of the question of the sufficiency of the water supply, this issue is material on the appeal. Prompted by appellants' strenuous contentions that they have been over-reached in their dealings with the respondents, we have carefully read the record for evidence of fraud, and are not prepared to say we find fraud sufficient to vitiate the contract. Conceding the point, which is not clearly brought out by the evidence, that the respondents' manager represented to the appellants that eighteen inches of water was an adequate supply, we are satisfied that this was a mistaken conclusion rather than a fraudulent misrepresentation. It appears that numerous prospective parties to similar contracts with the Reclamation Company investigated the sufficiency of the supply, and that all were equally mistaken as to the sufficiency of eighteen inches to reclaim the land and raise general crops. The appellants apparently made no independent investigation on this question, but relied upon the general impression then prevailing in the community that eighteen inches would be sufficient. It is, we think, clear that this contract is a result partly of the overconfidence of all the parties concerned, and partly of an insufficient investigation, and of a general mistake as to the amount of water needed to properly reclaim lands in the district sought to be irrigated.

Seven or eight witnesses testified on behalf of appellants that eighteen inches was not an adequate water supply and could not be expected to raise any crops, except possibly it might be sufficient for the growth of trees if the water was piped to each tree. The respondents concede that it is not sufficient to water alfalfa, but assert that it was not intended to be sufficient for that purpose. It appears, however, that

in the literature sent out descriptive of this project, the respondents stated that the supply was sufficient to raise general crops, and such seems to have been the intention of the various contract holders. The collective opinion of these witnesses for the appellants was that an eighteen-inch supply would be of no value to the land, and that profitable farming could not be conducted with such a supply. Illustrative of this opinion is the testimony of witness Thom, professor of soils at Washington State College, who testified that only a part of the land could be reclaimed with an eighteen-inch right; and witness Sharry, of Attalia, a civil engineer of experience in irrigation, who testified that he was familiar with soil conditions at Pasco and that eighteen inches would be of no practical value on the lands. Sharry further testified that, by actual measurement, he had found thirty inches to be insufficient to grow trees at Attalia, twelve miles distant from appellants' land and on similar soil. Other witnesses testified that, to farm successfully, the land would need in the neighborhood of thirty inches, and that successful farming could not be done with eighteen inches.

The trial court rejected the testimony of these witnesses on the ground that their experience was gained at places too far distant from the lands in question to be of any value, and based his decision on the testimony of respondents' witness Kirk. Kirk owned lands near Pasco and testified that he had raised diversified crops on no less than eighteen inches of water. An examination of his testimony convinces us that it is unreliable because based on an estimate of the amount of water used, rather than on actual measurement. He testified that he *estimated* he was using five to seven inches; again, that he used twelve to fourteen inches, stating, however, "that is only a guess." He also stated that he estimated the amount he used from the fact that he watered less frequently than others in that neighborhood, and that he estimated the amount by the size of the stream and the speed of the water. When contrasted with the testimony of men who actually

measured the water used, this testimony is of little value in reaching a correct conclusion. True, none of appellants' witnesses were residents of Pasco, but all testified to their knowledge of Pasco lands and qualified as competent to testify as to the amount of water needed on similar lands. Had Kirk's testimony been based on actual measurements of water used, it would be entitled to great weight, but we fail to find where he founded his knowledge of usage on other than estimate and comparison with other users.

That part of the contract relating to the amount of water to be supplied reads as follows: "supply water between the first day of April and the first day of October of each year to the extent of one and one-half (1½) acre feet per acre per year, or so much thereof as shall be required for irrigating." It seems evident that, in making this contract, the parties were of the opinion that eighteen inches would be an adequate supply for the irrigation of these lands. It is not reasonable to suppose that the appellants would have entered into a contract to convey this land for something which would be of no value to them, nor that the respondents would undertake to furnish a water right which would be insufficient to reclaim any of the lands. Taken by its four corners, and considering the circumstances under which it was made, we regard the undertaking of the respondents to be the reclamation of these lands rather than a mere contract to supply eighteen inches of water; an undertaking which we cannot but conclude will not be fulfilled in tendering an eighteen-inch water right. In holding that this contract was entered into under the mistaken belief that eighteen inches of water per annum would be sufficient to raise and mature crops, we may refer to *Gantenbein v. Pasco*, 71 Wash. 635, 129 Pac. 374, 131 Pac. 461, where, in reviewing similar contracts of this same company, we reached the same conclusion as to the insufficiency of eighteen inches, finding that it had been practically demonstrated in that case that no less than twenty-four inches of water per annum was necessary.

It follows from what we have said that, to decree specific performance in this case, would be the enforcement of an unequal contract which will impose hardship upon the appellants, and one to which a court of equity cannot lend its aid. Further, the consideration for the conveyance of this land appears to us to be entirely inadequate. While inadequacy of consideration is not alone a sufficient ground for refusal to decree specific performance when not conclusive of fraud, it is well settled that, where the disparity is so great as the evidence shows it to be in this case, courts of equity, exercising a sound discretion, will refuse to lend aid in enforcing the contract. Fry, Specific Performance (3d Am. ed.), § 397, and cases cited; Waterman, Specific Performance, § 169.

What we have said on the subject of specific performance applies alike to the foreclosure of the lien for maintenance charges. The water right being of no value to the appellants, it would be an unconscionable contract to enforce, allowing respondents to take appellants' land on a lien for something which was of no benefit to the land.

One other matter will be referred to. Respondents move to strike appellants' brief because of the use of discourteous language in referring to the trial judge. The language complained of will not be set forth. It merits the charge made against it, and counsel for appellants are censured for its use. To strike the brief, however, would mean either that the court must assume the added burden of reviewing the case without the aid of appellants' brief, or we must order the filing of a new brief and await the determination of the appeal until its arrival and examination. The first of these alternatives we do not care to assume. The second would only mean additional cost and delay to both parties. We have, therefore, concluded, since the language complained of cannot be overlooked and deserves more than censure, to disallow appellants the cost of printing their opening brief of 117 pages, and it is so ordered.

The case will be reversed, leaving the parties to such further proceedings as they may see fit to take not inconsistent with this opinion.

MOUNT, ELLIS, and CHADWICK, JJ., concur.