ALVERDA P. MONK *vs.* JASON MORTON.

Kennebec.   Opinion, January 19, 1943.

*Perkins, Weeks & Hutchins,* for the plaintiff.

*Paul S. Woodworth,* for the defendant.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

CHAPMAN, J.   The plaintiff seeks in a plea of land to regain possession of real estate occupied by the defendant under the

provisions of a bond for a deed given by the plaintiff to the defendant. The case was submitted to the Presiding Justice of the Superior Court on an agreed statement of facts and exhibits, to be determined by him without a jury. The finding was for the plaintiff, and the defendant excepted thereto.

For our purposes, the following is a sufficient statement of the case, as gathered from the agreed statements of facts and the bond, which are made a part of the bill of exceptions:

The bond for a deed was in the form common in this jurisdiction. The consideration for the title to be transferred was One Thousand Dollars, to be paid "Fifty Dollars July 17, 1940; Fifty Dollars October 17, 1940, and One Hundred Dollars on October 17th. each and every year thereafter until said sum is paid in full; with interest at six per cent per annum payable annually from October 17, 1940." The bond contained also the following provision: "The said Jason Morton has privilege of cutting pulp from said lots and pay said Alverda P. Monk the sum of two dollars per cord when said wood is cut, sawed, peeled and piled; and an additional two dollars per cord after said wood is yarded in the field on said property. Any timber or wood that is cut from said lots and not used on the premises shall be paid for at the going price per thousand feet or per cord to said Alverda P. Monk as stumpage." And also, "Said Jason Morton to have possession of said premises until he shall have failed to perform the condition of this bond." Taxes assessed for the year 1940 were to be paid by the said Morton. Possession of the premises was delivered to the defendant and on July 17, 1940, a payment of Fifty Dollars was made by the defendant and indorsement made upon the bond as follows: "Rec'd Fifty ($50.00) dollars July 17th 1940 on morgage."

On October 17, 1940, a payment was made by the defendant of Fifty Dollars and indorsement upon the bond made as follows: "Rec'd Oct. 17th 1940 ($50.00) on morgage." On December 2, 1940, the defendant cut pulp wood and in accordance with the provision in the bond made a payment of Two Dollars to the plaintiff, for which a receipt was given and indorse-

ment upon the bond made as follows: "Rec'd Dec. 2nd 1940 (2.00) two dollars on morgage." On December 14, 1940, the defendant cut twenty-five cords of pulp wood and made payment of One Hundred Dollars. A receipt was given by the plaintiff of the following tenor: "December 14, 1940 Rec'd one (100) hundred dollars from Jason Morton of Benton for second twenty (25) five cords pulp no more or less.

Mrs. Álverda Monk

When you come down bring this receipt and your deed or note and I will put it on there." On November 22, 1941, a payment of Fifty-five Dollars and fifteen cents was made by the defendant and a receipt given of the following tenor: "November 22, 1941 Received of Jason Morton fifty-five and 15/100 dollars, it being $48.90 on interest on bond for a deed to October 17, 1941, said bond being dated July 17, 1940; and six and 25/100 dollars being for fire insurance premium.

$55.15 Alverda P. Monk By H. H. Brazzell her atty." and indorsement was made upon the bond as follows: "1941 November 22. Rec'd on within bond interest to Oct. 17/41 in sum of forty-eight and 90/100 dollars, $48.90."

Taxes upon the property for the year 1940 were paid by the defendant in accordance with the bond.

The plaintiff contends that the defendant was in default, in that no payment was made upon the principal on October 17, 1941. She claims that, under the provisions of the bond, the defendant was to receive no benefit for payments made for wood cut, unless the annual instalments were paid; that such payments were to be held in abeyance until final settlement. The defendant claims that the payments for wood cut should be credited upon the annual instalments; that the payments of December 2d and December 14th were anticipatory of the instalment due October 17th, and must stand in place thereof. If the plaintiff's contention as to the payment for wood cut is correct, the defendant was in default, as claimed. If the defendant's contention is correct, he was not in default and the plaintiff cannot maintain her action.

The issue raised brings into consideration the interpretation of so much of the bond as relates to the payment by the obligee of the bond, for pulp wood cut upon the premises.

In *Power Company* v. *Foundation Co.,* 129 Me., 81, 85, 149 A., 801, 802, the Court said:

> "It is fundamental, in construing written contracts, that valid intention, as deduced from the language of the whole instrument, interpreted with reference to the situation of the parties at the time the contract was made, must prevail. *Bell* v. *Jordan,* 102 Me., 67, 65 A., 759. Such intention, which has been called the polestar of construction, must be gathered from the writing, construed in respect to the subject-matter, the motive and purpose of making the agreement, and the object to be consummated. *Roberts* v. *McIntire,* 84 Me., 362, 24 A., 867, . . . An ambiguous contract will be construed most strongly against him who used the words concerning which doubt arises. 13 C. J., 544."

The bond is explicit that the obligee may cut wood, paying the obligor therefor, but it is absolutely silent as to giving credit for those payments upon the consideration named in the bond for the transfer of the land. A due regard, however, for the situation of the parties, the subject matter, the motive and purpose of making the agreement and the object to be consummated, compels the conclusion that the parties intended that the payments for wood were to be a credit upon the consideration for the transfer. Otherwise, the obligee of the bond would pay more than One Thousand Dollars, which was named as the consideration. This interpretation, the defendant adopts.

The bond is likewise silent as to whether the payments for the wood were to be credited upon final settlement or upon the annual payments. But we believe that a consideration of the situation of the parties, the purpose of making the agreement

and the object to be consummated, makes more reasonable the interpretation that the payments were to be credited as of the date when made, and thus be a payment on account of the annual payment next following the date upon which the payment for the wood was made. It was to the advantage of both parties that the final transfer of the property be consummated. This was the objective of the bond. Possession and use of the premises were given to the obligee. It is a common practice to allow the grantee in such transactions to operate the premises to obtain the means to meet his payments. *Thompson on Real Property*, Sec. 4873; *Sikes* v. *Page*, 12 Kentucky Law Reporter 780; 15 S. W., 248. It operates to bring about the objective sought and is not to the detriment of the grantor, as it replaces his security with money.

The parties might have entered into a contract containing either, a provision that the wood payments should be applied to the annual instalments or a provision that these payments should be held in abeyance until the final settlement; but, the bond being silent in this respect, we believe that the more probable and reasonable intention was that the payments should be applied to the annual instalments.

> "Where the language of a contract is contradictory, obscure or ambiguous, or its meaning is doubtful, so that the agreement is fairly susceptible of two constructions, the more natural, probable, and reasonable interpretation should be adopted." *Barnsdall Oil Co.* v. *Leahy*, 195 Fed. (CCA), 731, 734.

The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises, is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. It is presumed that he will not leave undeclared that which he would claim as his right under the agreement; and the absence of a requirement against the

obligee is evidence that such requirement was not within the understanding of the parties. "He who speaks should speak plainly, or the other party may explain to his own advantage." *State* v. *Executors of Worthington,* 7 Ohio, pt. I, 171. If it was intended that the payments for the wood should not be for the benefit of the obligee until the annual instalments had been made, it would have been a simple matter to so indicate in the bond. Likewise, the obligor could have made the matter plain in the wording of the indorsements upon the bond acknowledging the receipt of the payments.

If we look to the acts of the parties in carrying out the transaction, the above interpretation is supported. At the time of the payment of Two Dollars on the first instalment of wood cut, the parties were apparently in agreement that the true nature of the payment should be indicated upon the bond. Not only was a receipt given, but the plaintiff, in her own words, indorsed it as a cash payment on the bond as of that date. The wording, date and amount excepted, was the same as in the two previous cash instalments. She offered, upon the receipt given for One Hundred Dollars in payment for the second instalment of wood cut, to indorse the payment upon the bond, and it must be presumed that she intended to make the same indorsement as made upon the previous payment for wood cut. A creditor may accept payment before it is due, and these indorsements indicate an intention that the payments should take effect as cash payments and as of the date made. If we had the bond before us with the indorsements thereon, and the one which the obligor intended to make thereon, and without any other evidence, we would be bound to the conclusion that there was nothing due upon the principal of the bond on October 17, 1941. In other words, the receipts and indorsements written by the obligor is *prima facie* evidence of intention to apply the payments to the annual instalment.

The treatment of the payments by the plaintiff was in accord with the interpretation which, judged by the subject matter, the motive and purpose of making the agreement and the

object to be consummated, is the more natural, probable and reasonable.

The defendant was not in default as to the principal on October 17, 1941. The default as to interest was waived by the plaintiff by the later acceptance of the same by the plaintiff.

*Exceptions sustained.*