[No. 29002. Department Two. June 14, 1943.]

KARL KRIEG et al., *Appellants*, v. HARRY SALKOVICS
et al., *Defendants*, J. HAAS, *Respondent*.[1]

*Marion Garland, Sr.*, and *Marion Garland, Jr.*, for
appellants.

*Caldwell, Lycette & Diamond* and *Herman Howe*, for
respondent.

ROBINSON, J.—On May 31, 1941, the appellants, Karl
Krieg and wife, sold to Harry Salkovics and wife the
south five acres of the southwest quarter of the north-
east quarter of the northwest quarter of section 1,
township 23 north, range 1 E. W. M., for the sum of
$2,250, the vendees paying one hundred fifty dollars

[1]Reported in 138 P. (2d) 855.

down and agreeing to pay the balance in monthly installments of forty dollars for a period of six months beginning June 7th, and thereafter twenty-five dollars per month until paid in full. The contract contained the various provisions commonly found in such instruments, including the following:

"Time is of the essence of this contract; and in case of the failure of the vendees to make the payments at the time specified, all payments made hereunder shall be forfeited to the vendors, as and for liquidated damages and this agreement shall be null and void at the option of the vendors, and they shall have the right to re-enter and take possession of said land and premises, and every part thereof, without suit."

The vendees entered into possession and added several rooms to the house. There is evidence that these improvements cost $1,250, exclusive of considerable labor. Appellant Krieg testified that he had seen the improvements, and conceded that they were worth at least one thousand dollars.

Vendees defaulted in their payments due in April, May, and June, 1942, whereupon Krieg, who lived at Port Angeles, went to the property, which is near Port Orchard, and told the vendees that he was not working, had no regular pay check coming in, needed the money, and mentioned a possible foreclosure of the contract if it was not forthcoming, to which he testified Mrs. Salkovics responded: "Try to get us out. People like that, we give them a pair of black eyes."

The vendees continued in default. No payment was made on July 7th, whereupon the vendors notified them, by registered letter, that the sum of one hundred dollars was overdue, and that, unless the payments were made within fifteen days after the receipt of the notice, the contract would be forfeited. On July 31st, Mrs. Salkovics sent the Kriegs a conciliatory letter containing a fifty dollar check postdated August 14th. This check the appellants returned by registered letter of

August 1st, calling attention to the fact that the check was not only postdated, but inadequate in amount, and stating that, unless the payments due were made, legal action would follow. The Salkovics, as noted on the envelope by the postal authorities, refused to receive the letter, and it was returned to the Kriegs. The letter was produced and opened at the trial, and, with the postdated check, was put in evidence.

This action to forfeit was served and filed on August 17, 1942. A *lis pendens* was filed for record on the same day. The defendants did not appear in response to the summons and complaint, but, on September 21, 1942, J. Haas was permitted, by a court order, to file an answer in intervention. In this answer, he alleged, in substance, that, on or about the 17th of August, 1942, he purchased the real property described in the complaint from the Salkovics and became the owner thereof; that the contract set forth in the complaint would, on October 1, 1942, be in arrears in the total sum of $125. Intervener paid $125 into court, offered to pay the statutory costs and such further sum as the court might award as attorney's fees, and prayed that the case be dismissed.

On November 25, 1942, the day the case came on for trial, the intervener paid a further sum of fifty dollars into court. From what has already been said, it will be seen that $150 was due when the intervener paid in $125, and that the tender made on the date of the trial was still short one monthly payment.

At the conclusion of the trial, the trial court, having found the facts as above stated, entered a decree providing, in substance, that, if, on or before December 9, 1942, the intervener should pay into court an additional fifty dollars, the costs of the action amounting to $14.60, $100 for attorney's fees, and $15 to reimburse plaintiff Krieg for traveling expenses in connection with attempting to collect the back payments, then the con-

tract would stand reinstated and in good standing, but that, if this was not done on or before December 9th, a writ of assistance should issue forthwith, placing the plaintiffs in possession of the property.

It appears, by supplemental transcript, that, on December 2, 1942, the intervener paid into court the sum of $179.60, being the $50 payment, the costs and attorney's fees required by the decree, and that these sums and the monthly payments subsequently made remain in the registry of the court pending the disposition of this appeal.

If the Salkovics had appeared in this action and tendered the amount necessary to reinstate the contract, and invoked the equitable power of the court to relieve them from the forfeiture—which was inevitable at law—and on their prayer the court had entered in their favor such a decree as it entered upon the prayer of the intervener, we apprehend that we would have no difficulty in affirming it in spite of their long continued default. But the Salkovics did not appear to resist the forfeiture, and, as we read the record, they take no benefit from the decree entered in this cause. They sold their contract, with its accrued lawsuit, to Haas who came in and insisted that, if the plaintiffs in the action were permitted to enforce their legal rights, it would be such an unconscionable wrong as to him that equity should intervene to prevent it. The burden was upon him to establish that proposition, and, in our opinion, he did not do so.

The record is in some respects not as clear as might be desired, but it is at least certain that Haas, as he alleged in his answer, purchased the interest of the Salkovics, and took a quitclaim deed from them on August 21st. At that time, he was legally bound to know that a *lis pendens* had been filed on August 17th, and, in fact, he knew that and more, for he had seen the complaint and knew that the contract was in arrears, as therein charged.

While he was on the stand, the trial judge interrogated him as follows:

"THE COURT: So you took the deed and—THE WITNESS: No, I didn't take a deed until I found out he was in arrears. THE COURT: You found out he was in arrears? THE WITNESS: Yes. When he came and showed me the summons and complaint, I says, 'How come you didn't tell me?' He says, 'I wrote him a letter. I sent him $50.00.' And he says, 'I will give him the balance after we get this money, after we sell the place.' THE COURT: Then you took the deed? THE WITNESS: Yes. THE COURT: You bought the property? THE WITNESS: Yes, I bought the property. THE COURT: What did you do then after you got the deed? THE WITNESS: I sold—THE COURT: In regard to the contract. THE WITNESS: I sold it. I found out how much the arrears was and I deposited the money in court."

At another point in the record, it appears that the intervener testified that he bought and sold real estate:

"Q. And you buy as cheap as you can and sell for as much as you can get? A. That's right."

At still another point, it appears that he disposed of the property to one Harden:

"Q. How much did you sell it to him for? A. $3,250.00. Q. How much down did he pay? A. He paid $1,250.00."

But nowhere in the record is there any evidence revealing how much Haas paid the Salkovics, and, therefore, no evidence as to what extent the forfeiture of the contract would affect him. For aught that the record shows, he may have acquired the Salkovics' interest for a relatively nominal sum. In the absence of any evidence on the subject, there is room for inference that he probably did. The Salkovics were in a quite hopeless position. They were in default five monthly payments. Due notice of forefeiture after demand and notice had been given. They had been served with summons and complaint praying for the cancellation of the contract and the issuance of a writ

of assistance. As is indicated by their postdated check, they had no funds with which to either settle or defend the action. Nor would the intervener have been justified in paying a very substantial sum, for he knew that he was literally buying a law suit. Furthermore, having inserted himself into the picture, he did not even act promptly, but, having full knowledge of the action, at least as early as August 21st, he waited a full month before making a tender; nor did he ever tender the full amount in default.

The intervener, of course, acquired, through the Salkovics' deed, the legal rights of the Salkovics, but it does not follow that he, therefore, stands before the court as the Salkovics would have stood if they had appeared and prayed for the interposition of equity, that is, as vendees who would lose $1,000 to $1,250 worth of improvements if the enforcement of the vendors' legal rights was not prevented. What the intervener stands to lose if the vendors' rights are enforced, or that he stands to lose anything, is in no way shown, for we have none of the details of his transaction with the Salkovics. He will, doubtless, be greatly inconvenienced by the enforcement of the vendors' legal rights, and, if he bought from the Salkovics without recourse, he will presumably suffer some financial loss. But how much? In the absence of evidence on that point, the court cannot, in the use of its equitable power, refuse to enforce the vendors' rights at law, for it has no data from which it can conclude that their enforcement will result in an unconscionable wrong.

The decree appealed from is reversed and the action is remanded for further proceedings not inconsistent herewith, with instruction to grant the prayer of the plaintiffs' complaint.

SIMPSON, C. J., BEALS, BLAKE, and GRADY, JJ., concur.

---

July 16, 1943. Petition for rehearing denied.