[Nos. 2199-3; 2274-3.   Division Three.   February 27, 1978.]

WILBUR G. HALLAUER, *Respondent,* v. LILA M. CERTAIN, *Appellant.*

WILBUR G. HALLAUER, *Appellant,* v. LILA M. CERTAIN, *Respondent.*

*Nansen, Price & Howe* and *Richard B. Price,* for appellant/respondent Certain.

*Aiken, St. Louis & Siljeg, George S. Martin, Mansfield, Morrissey & Thomas,* and *R. E. Mansfield,* for respondent/appellant Hallauer.

McINTURFF, J.—Defendant, Lila M. Certain, appeals from a summary judgment awarding specific performance of a real estate contract to plaintiff Wilbur G. Hallauer.

The litigation concerns a land contract executed in June 1966 between Mrs. Certain and her now deceased husband, as sellers, and Mr. and Mrs. John Hallis, as purchasers. The property, located in Okanogan County, was sold for $80,000 on a contract requiring $15,000 down and annual installments of $6,000. In addition, the Hallises were required to pay all taxes and assessments.

Late in 1972 Mrs. Certain learned the Hallises had arranged for substantial timber removal from the property without providing for the application of the stumpage proceeds to the purchase price as required by the contract. Specifically, the contract provided:

> It is understood and agreed that the timber on portions of said land has been sold with the right to remove the same, as provided in the instruments referred to above as exceptions to the description of the property sold. *In case purchaser desires to sell any other merchantable timber from the premises, he may do so, and in such case one–half of the stumpage received by purchaser shall be paid to seller and applied on the purchase price of this contract.*

(Italics ours.)

On January 11, 1973, Mrs. Certain sent notice of intention to declare a forfeiture of the real estate contract to the Hallises and several other interested parties including Mr. Hallauer, the plaintiff. Specified as items of default were (1) the failure of the Hallises to pay the annual principal and interest installment of $6,000 due on October 1, 1972; (2) failure to pay real estate taxes prior to delinquency; (3) failure to account for one–half the stumpage proceeds received from the timber sale, and (4) failure to pay costs and attorney's fees incurred to effect notice.

Meanwhile, the stumpage proceeds were being held by the Port Gardner Timber Company and Everett Terminal Company. The Old National Bank (ONB) was claiming all the proceeds under an assignment from Hallises. Following negotiations between counsel for the timber company and Mrs. Certain, the timber company paid one–half the proceeds to Mrs. Certain's attorney on February 9, 1973, despite ONB's continued claim to the funds.

Considering payment of the stumpage proceeds as not curing all the items of default, Mrs. Certain, on February 27, 1973, sent notice of declaration of forfeiture of the real estate contract to the Hallises and the other interested parties, again including Mr. Hallauer. Since then, she claims she has entered into grazing leases for the property and filed water rights claims for it. She and her son have entered a joint farming venture on the land, and it has been reevaluated and reassessed by the county for tax purposes. It may now be worth more than $220,000.

Mr. Hallauer's interest in the property arises through a judgment he obtained in King County against the Hallises prior to the forfeiture actions taken by Mrs. Certain. Pursuant to RCW 6.32.290, a receiver was appointed in proceedings supplemental to execution of that judgment on February 6, 1973, midway between the dates Mrs. Certain sent the notice of intent to declare forfeiture and the declaration of forfeiture. Within 4 months a trustee was appointed in involuntary federal bankruptcy proceedings against the Hallises, and extensive litigation ensued to determine the rights of the receiver and trustee. In any event, the bankruptcy trustees received the interest of the Hallises in the real estate by quitclaim deed which they, in turn, deeded to Mr. Hallauer in October 1975. The transfer was approved in the state court supplemental proceedings in April 1976.

On May 26, 1976, and June 4, 1976, Mr. Hallauer notified Mrs. Certain of his interest and intent to satisfy the contract in full. Believing the Hallises' interest to have been forfeited by her declaration in February 1973, Mrs. Certain

refused satisfaction, and Mr. Hallauer commenced this action for specific performance of the real estate contract.

His motion for summary judgment was granted, the court finding (1) the notice of intent to declare forfeiture was faulty in that the contract did not allow attorney's fees and costs for effecting notice; (2) the stumpage proceeds were applicable on the purchase price, first to interest for the prior year, and the remainder to the principal; (3) any defaults were cured by the stumpage payment; (4) as a result, the notice of declaration of forfeiture was invalid because the defaults had been cured; and (5) the plaintiff was the legitimate successor to the Hallises and entitled to the relief sought.

Mrs. Certain appeals from that judgment, contending there were material issues of fact remaining unsettled at the time of plaintiff's motion. In the alternative, she argues that, assuming no contested factual questions, the court erred in concluding that the defaults were cured by the receipt of the stumpage proceeds. Finally, she questions whether Mr. Hallauer acquired any interest in the property by virtue of the receivership proceedings.

██ It is well settled that a party moving for summary judgment must establish that there is no genuine issue as to any material fact and that the undisputed facts require judgment in his favor. Mrs. Certain contends that a genuine issue of material fact was created by the conflicting positions of the parties in regard to that provision of the contract concerning the application of the stumpage proceeds. Her position is that the proceeds were not applicable to the overdue annual installments and taxes but were additional funds to be applied to the purchase price. Mr. Hallauer believes the stumpage proceeds constituted payment of the installment and taxes.

That disagreement, in itself, is not a sufficient reason to deny a motion for summary judgment. Unless there is an ambiguity in the terms of a contract and contradictory evidence is introduced to clarify the ambiguity, summary

judgment is proper despite a difference between the parties as to the legal effect of the provision in question.[1]

Regardless of whether the terms of the contract in question here are ambiguous, the only extrinsic evidence offered to clarify the intent of the parties is an affidavit by Mrs. Certain which states:

> My husband and I looked to the payments on this real estate contract for needed support for ourselves, particularly in light of his failing health and the large medical bills that we knew would continue and all the parties at the time of entering into the contract understood that any timber sale proceeds were to be applied on the balance of the contract and in no way were to constitute in lieu of annual installment payments.

There are no contradictory affidavits or evidence to further clarify the meaning of the provision or create a factual question. The only dispute concerns the legal effect of the language of the contract. In such circumstances summary judgment is proper. *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970).

The court gave to the questioned provision the interpretation urged by Mr. Hallauer, *i.e.,* that the payment of stumpage proceeds was payment of the overdue annual installment and taxes. In short, the court considered the term "purchase price" to include the yearly payments. A careful reading of the entire contract, and particularly the questioned provision, requires a different result.

It is evident the parties intended the payment of stumpage proceeds be considered as supplemental to the yearly installments and payment of taxes. They specifically agreed that the right to cut and remove timber from particular portions of the land was sold with the land itself, as evidenced by other documents referred to in the land contract. The buyer was not required to account for stumpage from

---

[1]*Pine Corp. v. Richardson,* 12 Wn. App. 459, 530 P.2d 696 (1975); *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970).

In light of our disposition regarding the contractual interpretation, we do not reach Mrs. Certain's other alleged issues of fact.

those portions. However, the seller, in granting the right to remove any "other merchantable timber from the premises," expressly required an accounting for one–half the stumpage. Allowing the buyer to make contract payments with proceeds from the sale of timber *not* sold with the land would defeat the intention of the parties by substantially reducing the seller's security.

*Monk v. Morton*, 139 Me. 291, 30 A.2d 17 (1943), cited by Mr. Hallauer to support the judgment of the trial court, is distinguishable. There the purchaser attempted to defend against default by claiming that proceeds from a timber cutting should be applied upon annual installment payments. The court considered stumpage payments applicable to the next annual installment payment on the theory that such a construction benefitted both parties by speeding final transfer of the property. The court noted at page 295:

> This [the transfer] was the objective of the bond. Possession and use of the premises were given to the obligee. It is a common practice to allow the grantee in such transactions to operate the premises to obtain the means to meet his payments. . . . It operates to bring about the objective sought and is not to the detriment of the grantor, *as it replaces his security with money.*

(Citations omitted; italics ours.)

The contract provision in *Monk*[2] did not segregate the rights to the cutting and sale of certain portions of timber as was done here. Here, had the proceeds paid to Mrs. Certain come from the sale of timber the Hallises were free to cut and sell, without an obligation to account, the reasoning of *Monk* would be applicable. But that is not the case. Therefore, payment of the stumpage proceeds did not cure

---

[2]The contract in *Monk* provided at page 292: "'The said Jason Morton has privilege of cutting pulp from said lots and pay said Alverda P. Monk the sum of two dollars per cord when said wood is cut, sawed, peeled and piled; and an additional two dollars per cord after said wood is yarded in the field on said property. Any timber or wood that is cut from said lots and not used on the premises shall be paid for at the going price per thousand feet or per cord to said Alverda P. Monk as stumpage.'"

the overdue installment or tax payments, and the court's holding is reversed.

Since the defaults were not cured[3] within the reasonable time accorded by Mrs. Certain in her notice of intent to declare forfeiture, she was properly able to effect a rescission of the Hallis contract. However, because of the intervening appointment of the receiver in state court proceedings supplemental to execution in addition to the almost simultaneous federal bankruptcy proceedings and the transfer of the Hallises' interest through the bankruptcy trustee, the parties have suggested problems to be solved regarding the standing of Mr. Hallauer to specifically enforce the contract against Mrs. Certain.

Relying principally on *Krieg v. Salkovics*, 18 Wn.2d 180, 138 P.2d 855 (1943), Mrs. Certain argues that the equities of the Hallises cannot have passed to Mr. Hallauer so as to allow him the requested relief. *Krieg* is distinguishable, Mr. Hallauer says, because there the purchaser of the defaulting vendee was attempting to avoid the forfeiture by curing vendees' defaults. That basically is what Mr. Hallauer is attempting to do, *i.e.*, tendering all the necessary contractual payments of the Hallises in order to acquire the land. There is no difference in that distinction. The essence of *Krieg* is that unless the purchaser of a defaulting vendee can establish that the forfeiture would be "such an unconscionable wrong as to him that equity should intervene to prevent it," *Krieg v. Salkovics, supra* at 183, he will not be able to assert whatever equities might have been available to the vendees from whom he purchased.

Here, as in *Krieg,* Mr. Hallauer knew the contract was in arrears long before he received the quitclaim deed from the

---

[3]The trial court considered the notice of intent to declare forfeiture invalid because it listed costs and fees to effectuate the notice as one of the items of default. The court construed the contract as not allowing such sums to the defaulted seller. We need not review the court's construction of that portion of the contract, but we note that a notice of forfeiture which demanded a sum larger than that actually due was nonetheless effective against defaulting vendees in *Harris v. Seattle Land & Improvement Co.*, 122 Wash. 323, 211 P. 282, 214 P. 1066 (1922).

trustee in bankruptcy. Here, also, there is no evidence as to what extent the forfeiture of the contract would affect Mr. Hallauer because the record does not show to what extent the transfer of the Hallises' interest might have satisfied the judgment he had earlier obtained against them. Here, too, Mr. Hallauer knew "that he was literally buying a law suit." *Krieg v. Salkovics, supra* at 185. While he may have tendered the full amount in default, he did not act promptly to secure whatever rights he now asserts. Having received notice of both the intention to declare forfeiture and the forfeiture itself at the same time as the Hallises (January and February 1973), he made no attempt to cure the defaults until 3 years later when he relied on the fortuitous payment of the stumpage proceeds as constituting a cure of the contractual deficiencies.

The critical difference between *Krieg* and this case is that Mr. Hallauer received the Hallises' interest in the contract through the trustee in bankruptcy while in Krieg the interest of the defaulting vendees was purchased directly by the party later asserting their interests. While we are invited to consider the timing and nature of the interests transferred through the insolvency proceedings, we decline the offer because even assuming that Mr. Hallauer had the necessary standing to assert the Hallises' position on the contract, we would not be persuaded that equity should come to his aid to specifically enforce the contract against Mrs. Certain.

Specific performance is not a matter of right in equity; rather it rests in the sound discretion of the trial court.[4] It must be exercised in accordance with general principles of equity jurisprudence, and the party seeking such relief must have acted in good faith, come into equity with clean hands and do what is just and equitable to the defendant. *Cascade Timber Co. v. Northern Pac. Ry.,* 28

---

[4] *Cascade Timber Co. v. Northern Pac. Ry.,* 28 Wn.2d 684, 184 P.2d 90 (1947); *Fitzsimmons v. Fitzsimmons,* 116 Wash. 635, 200 P. 305 (1921); *Voight v. Fidelity Inv. Co.,* 49 Wash. 612, 96 P. 162 (1908).

Wn.2d 684, 184 P.2d 90 (1947). It will be denied where there is an adequate remedy at law,[5] where performance is impossible[6] and where, under the facts and circumstances, it would be inequitable to compel the defendant to perform.[7] Likewise, the right may be lost by the statute of limitations[8] and laches.[9] As the court said in *Lewis v. Wellard,* 62 Wash. 590, 592, 114 P. 455 (1911):

> It must be remembered that cases of this character are of equitable cognizance, and the rules governing them must be applied with more or less flexibility as the equities of the particular case warrant, having in mind the special facts and circumstances surrounding each case, and which call for the application of equitable principles.

Among special facts here is the reliance of Mrs. Certain on the failure of anyone, including Mr. Hallauer, the state receiver and the federal trustee, to assert a contrary position for nearly 3 years despite their knowledge of the forfeiture action. Also of special consideration is Mr. Hallauer's attempt to obtain through the quitclaim deed from the trustee in bankruptcy that interest in the real estate contract he failed to pursue or protect when given personal notice of the impending forfeiture in 1973. In addition, the record reflects interim attempts by Mr. Hallauer to purchase the contractual interests of Mrs. Certain so that he could effect the very forfeiture she did. Finally, while it is true that Mrs. Certain formally notified

---

[5]*Washington Trust Bank v. Circle K Corp.,* 15 Wn. App. 89, 546 P.2d 1249 (1976); *Cahalan Inv. Co. v. Yakima Cent. Heating Co.,* 113 Wash. 70, 193 P. 210 (1920).

[6]*Morrisey v. Strom,* 57 Wash. 487, 107 P. 191 (1910); *Morgan v. Bell,* 3 Wash. 554, 28 P. 925 (1892).

[7]*Nelson v. Nelson,* 57 Wn.2d 321, 356 P.2d 730 (1960); *Gilman v. Brunton,* 94 Wash. 1, 161 P. 835 (1916); *Pasco Fruit Lands Co. v. Timmermann,* 88 Wash. 112, 152 P. 675 (1915).

[8]*Edwards v. Beck,* 57 Wash. 80, 106 P. 492 (1910).

[9]*Mogul Logging Co. v. Smith Livesey Wright Co.,* 185 Wash. 509, 55 P.2d 1061 (1936); *Tacoma Water Supply Co. v. Dumermuth,* 51 Wash. 609, 99 P. 741 (1909).

neither the state receiver nor the federal trustee of her position on the contract, it is equally as clear by their own affidavits, that they were aware of her contentions and that they, too, failed to formally notify her of their pending proceedings.

The judgment of the Superior Court is reversed, and the case is remanded for entry of judgment in favor of Mrs. Certain.

MUNSON, C.J., and GREEN, J., concur.

Reconsideration denied March 21, 1978.

Review denied by Supreme Court August 25, 1978.