[No. 3698-7-III.   Division Three.   April 21, 1981.]

THOMAS CARPENTER, JR., ET AL, *Respondents*, v. HENRY FOLKERTS, ET AL, *Appellants*.

74

*John S. Moore* and *Velikanje, Moore & Shore,* for appellants.

*Douglas D. Peters* and *Peters, Schmalz, Leadon & Fowler,* for respondents.

McINTURFF, C.J.—Mr. and Mrs. Henry Folkerts appeal a decree of specific performance resulting from a lease–option contract for real property.

In 1975 the Folkerts (lessors) executed a lease–option agreement with Mr. and Mrs. Thomas Carpenter, Jr. (lessees) for approximately 62 acres of agricultural land. The contract provided for a yearly payment of $6,300 with an option to purchase at the end of 3 years for $95,000. Unknown to the Carpenters, the Folkerts had heavily encumbered the land. In addition to owing about $36,000 on their purchase of the property, the Folkerts acquired a $30,000 personal loan and a Small Business Administration loan financed through the Bank of Yakima for approximately $185,000.[1] Mr. Folkerts testified the Small Business Administration loan was for the purpose of beginning production on his patented chemical sprayer units. The lease provided:

> In the event that Lessees should exercise the said option, Lessors, upon payment of the purchase price by Lessees, shall convey a good and marketable title to the said premises to the Lessees free and clear of all encumbrances . . .

Mr. Carpenter said he had no actual knowledge of the encumbrances prior to entering into the lease.[2]

In 1978, the Carpenters attempted on several occasions to properly exercise their options; however, Mr. Folkerts refused tender and seemingly evaded opportunities to close the transaction because he had insufficient assets to pay off the encumbrances. At the time of trial the property, due to appreciation, was appraised near $179,000.

The trial court ordered the Folkerts to specifically perform under the lease–option and in the event they were

---

[1]Testimony indicated current balances of $36,000 on the purchase price of the property, approximately $13,000 for the personal loan, and approximately $165,000 with accrued interest for the SBA loan.

[2]Had a title record been provided at the date the lease–option was signed, testimony indicated only the amount of $40,000 owing on the property would have been apparent; the SBA loan disclosed no amount.

unable to do so, awarded judgment in favor of the Carpenters for any additional sums that might be needed to obtain clear title.

Initially, the Folkerts set forth a 3–pronged argument in support of their contention the trial court erred in granting specific performance: (1) the Carpenters had an adequate remedy at law; (2) the Folkerts were financially unable to convey title free and clear of the secured obligations; and (3) the Carpenters were bound in equity with knowledge of encumbrances through constructive notice of the secured obligations at the time of the execution of the lease–option.

■ It is accepted in Washington that a lease containing a lessee's option to purchase is enforceable by specific performance. *Paullus v. Fowler,* 59 Wn.2d 204, 213, 367 P.2d 130 (1961); *Time Oil Co. v. Palmer,* 28 Wn.2d 272, 274–75, 182 P.2d 695 (1947). It is also well settled that specific performance is not a matter of right in equity but a remedy which rests in the sound discretion of the court. *Hallauer v. Certain,* 19 Wn. App. 372, 379, 575 P.2d 732 (1978); *Egbert v. Way,* 15 Wn. App. 76, 79, 546 P.2d 1246 (1976).

Since real estate is considered unique, damages do not adequately compensate a purchaser for a seller's breach of a contract to purchase specific land. *Egbert v. Way, supra* at 79. *See generally* Washington State Bar Association, *Real Property Deskbook* § 51.11, at 51–6 (1979). No piece of land has its counterpart anywhere else and it is impossible to duplicate by the expenditure of any amount of money. 71 Am. Jur. 2d *Specific Performance* § 112 (1973). Mr. Carpenter was only interested in leasing the land if he were also to receive an option to purchase all of the property since his son was moving into the residence located on the land after college. Moreover, the Carpenters had purchased 8,000 fruit trees with the expectation of converting a portion of the property into an apple orchard. They also committed themselves to sell hops through 1982. In view of the foregoing circumstances, we conclude there is no adequate remedy at law and equity is the only basis to facilitate approximate justice between the parties. Additionally, we

note the Folkerts are financially insolvent; consequently, an action in damages against them is not such an adequate remedy at law to preclude specific performance. Restatement of Contracts § 362 (1932).

The Folkerts maintain it was inequitable to grant specific performance of the option when it was financially impossible for them to convey title free and clear of all secured obligations.

Financial inability is not the equivalent of legal impossibility. *Cannon v. Huhndorf*, 67 Wn.2d 778, 782, 409 P.2d 865 (1966); *Liner v. Armstrong Homes of Bremerton, Inc.*, 19 Wn. App. 921, 926, 579 P.2d 367 (1978). *Cf. Oneal v. Colton Consol. School Dist. 306*, 16 Wn. App. 488, 491, 557 P.2d 11 (1976). The fact performance becomes more expensive than originally anticipated does not justify setting the contract aside. *Streater v. White*, 26 Wn. App. 430, 431, 613 P.2d 187 (1980); *Liner, supra* at 926; Restatement of Contracts §§ 454, 467 (1932); *see also Cannon, supra* at 782. In the case at bench the contract calls for tender of title to the Carpenters free and clear of all encumbrances. To obtain clear title the Folkerts must satisfy the liens on the property.[3] The record indicates about $36,000 is still owed by the Folkerts to their vendors on the original contract to purchase the property. It is thus obvious the $95,000 purchase price is adequate to satisfy the terms of that sales contract, thereby allowing the Folkerts title to the property. The encumbrances on the property through the actions of the Folkerts would not prevent transfer of

---

[3]The Folkerts claim their defense of impossibility is controlled by the decisions of *Hallauer v. Certain, supra,* and *Carson v. Isabel Apartments, Inc.,* 20 Wn. App. 293, 579 P.2d 1027 (1978). These decisions do not support their proposition. In the former we stated the failure to promptly secure a right to performance may render the granting of specific performance inequitable. *Hallauer, supra* at 379–80. Our citation to impossibility cases referred to legal impossibility, *i.e.,* a person against whom specific performance is sought must have the power to perform. *Hallauer, supra* at 380 n.6. In the latter case we held an agent cannot be required to specifically perform when he holds neither legal nor equitable title to the realty. *Carson, supra* at 298. Under the facts of this case, however, we believe the Folkerts have the "power to perform."

title, *Cannon, supra* at 782; thus the Folkerts have the legal power to perform. Since they have an obligation to perform the condition precedent under the contract, *i.e.,* provide "good and marketable title," they may not be excused because they have overextended themselves. *See Liner, supra* at 926.

The Folkerts, in contending specific performance should not have been awarded since the Carpenters had constructive notice of the encumbrances, fail to consider the Carpenters' right to rely on the covenant to convey clear title. Any expenses which the Folkerts will have to incur in clearing title to the land were within the foreseeable contemplation of the parties when the lease–option was executed. The Folkerts voluntarily assumed these self–induced obligations and performance was not prevented by an act of God or through any fault of the Carpenters. The parties to complain of the lack of good and marketable title are the Carpenters—it is their decision to accept the conveyance under these circumstances. Consequently, the Folkerts should not be permitted to avoid performance for reasons springing from their encumbrances on the property. Personal inability, under these circumstances, is no defense.

The next issue is whether the court erred in granting both the decree of specific performance and an award of damages in the event the Folkerts are unable to produce clear title.

■■ A trial court, sitting in equity, may fashion broad remedies to do substantial justice to the parties and put an end to litigation. *Esmieu v. Hsieh,* 92 Wn.2d 530, 535, 598 P.2d 1369 (1979). Here, the court required the Folkerts to convey clear title and in the event they are unable to do so, the Carpenters may distribute the $95,000 purchase price to creditors of the Folkerts and receive a judgment against them for the balance. The court's oral decision set forth its rationale:

> In *Miller v. Dyer* [20 Cal. 2d 526 (1942)], an old California case reported in 127 P.2d at 901, and also reported in 141 ALR 1428, the rule was established in these words:

'It is likewise well settled that if a vendor (that would be Mr. Folkerts) and his wife has any interest in the property he has contracted to convey, the vendee (Mr. and Mrs. Carpenter) at their option may enforce the contract with respect to whatever interest the vendor possesses, and may also receive compensation for the deficiency in performance.' (Parentheses added.)

The cases cited again in *Milkes v. Smith* [91 Cal. App. 2d 79], 204 P.2d 419 [1949], which describes the resolution of this issue rather extensively, in one case, for example:

'Upon discovery by the vendee that the plaintiff held only the undivided half of the land, vendee was entitled to proceed at once to rescind the contract, but he was not obliged to adopt that course. He was entitled, as he has done in this case, to have the contract specifically enforced to the extent of the plaintiff's interest in the land.'

There is an extensive annotation at the ALR citation on the same subject where the annotator says:

'Under these circumstances it is generally held that specific performance may be enforced against the immediate vendor, either alone, if the purchaser is willing to accept such title as he can convey, with, in a proper case, compensation for deficiency in performance, or by joining the holder of the legal title as a party defendant.'

The court further noted:

The matter of damages, as I indicated yesterday, and I'm not talking about damages as an alternative to specific performance—I think that plaintiff has made his bed now and that's where he'll have to stay. But I am suggesting that the cases which I have cited to you and which indicate that he can have specific performance, to the extent that the defendant is able to perform, with compensation for a deficiency in that performance, means that is the basis for the court's order, . . .

. . .

. . . The court intends that he shall have the property for $95,000 free and clear, to the extent that the defendant is able to make it free and clear; and to the extent that Mr. Carpenter is required to expend money in excess of $95,000 to clear the title he will have a judgment for that deficiency.

The court's resolution brings the matter to a final determination and fashions a remedy which intends the Carpenters will be made whole, where a mere decree of specific performance would not give complete and full relief.[4] We consider these "damages" as equitable compensation similar to an accounting between the parties since the court through specific performance confirms the contract and accommodates the breach. *See* 71 Am. Jur. 2d *Specific Performance* § 216 (1973). We therefore conclude the trial court correctly awarded specific performance and compensation for any deficiency in title.

The final issue is whether the trial court erred in awarding attorney's fees.

A trial court may not award attorney's fees in the absence of a contract, statute, or other recognized ground in equity. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 797–98, 557 P.2d 342 (1976). The lease–option does not provide for attorney's fees. Additionally, we find no recognized ground in equity upon which to base an award of attorney's fees and therefore reverse the trial court's resolution of this issue.[5]

Judgment of the Superior Court is affirmed in part and

---

[4]The Folkerts cite *Cahalan Inv. Co. v. Yakima Cent. Heating Co.*, 113 Wash. 70, 193 P. 210 (1920), and *Smith v. Smith*, 4 Wn. App. 608, 484 P.2d 409 (1971), to support their proposition that the Carpenters should only be allowed a remedy in damages. However, *Cahalan* related to the measure of damages under a service contract to supply heat to an apartment house where substitution could be obtained. *Smith* involved a property settlement agreement requiring a father to furnish support to an adult son attending college. The court determined the contract merely called for a payment of money which is an adequate remedy at law.

[5]The Carpenters' reliance on *Scott v. Woolard*, 12 Wn. App. 109, 529 P.2d 30 (1974), is misplaced. There the trial court awarded attorney's fees because a party became involved in litigation with a third person as the result of another party's wrongful conduct. Here the parties are in privity; consequently, neither are entitled to attorney's fees on an indemnity theory. *Scott, supra* at 111.

reversed in part.

MUNSON and ROE, JJ., concur.