STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.: RE-97-63

FC-11-PEN-5/30/2001

FILED AND ENTERED
SUPERIOR COURT

MAY 30 2001

PENOBSCOT COUNTY

PAULA NORWOOD

Plaintiff

**ORDER**

v.

GREAT NORTHERN PAPER COMPANY, INC.
DAY'S AUTO BODY, d/b/a DAY'S CONSTRUCTION,
A/K/A DAY'S WELDING AND MACHINE

Defendants

This case has been before the court for some period of time and, when in order for jury selection, was resolved, as to the plaintiff by payment to the plaintiff of a sum satisfactory to settle the issues between her and the cross claimants, the parties here. The defendants were both cross-claimants. Great Northern Paper Company, Inc. (hereinafter Great Northern) has pursued its third-party complaint against Day's Auto Body d/b/a (hereinafter Day's). Day's however withdrew its claim for relief and seeks to have this matter end after hearing because of Great Northern's inability to prove grounds for relief.

The facts are generally as follows. Paula Norwood lives in a house which is situate downhill, easterly, from a power easement owned by Great Northern. Although the parties never identified the location of the house with respect to Route 116 it is clear from plaintiff's exhibit #15 that the Norwood house is west of Route 116 and that the power line lies

westerly of that. The Norwood house is one of a number of houses which are on the westerly side of Route 116. Although Day's attempted to suggest that the watercourse is a "ditch", it appears clear that it has been recognized as a stream for some period of time. It is known as Bailey Brook.

Bailey Brook runs easterly to intersect a frog pond just westerly of Route 116 and in the event that that overflows a twelve inch culvert feeds the surface waters running through it into the area east of Route 116 and in a continuing downhill fashion. It is clear that the stream is used pretty much year round and especially in heavy run offs. In earlier times, a well which was the water source for the Pelkey house was situate inside the stream's course.

The prior owner, the former spouse of Paula Norwood, Renny Pelkey, grew up in the house and purchased it during the late stages of his military career. He lived there after he retired until about 1993. He described the house in historical terms and made it clear that the basement was always damp. Indeed, he says that when his mother sent him to the basement as a boy he would come up from the cellar with mud all over him. He also testified that during the spring he continually ran the sump pump and had four inch pallets on the floor on which he piled the wood that he used to burn in the winter. He also testified that there was often water in the garage in wet periods of the year. He testified for Days.

The testimony of Paula Norwood was produced through her deposition which the court read. Her testimony makes it clear that the year giving rise to the litigation was worse, in terms of surface water

than any others had been. This was confirmed by the first witness, Alexander Hutcheon, an engineer who testified out of order for Days. It is equally clear from the testimony of John Coombs that the events of July, 1996 during hurricane Bertha caused extensive damage and inconvenience to her and to her house.

The court is persuaded by the evidence produced that Mr. Coombs' version of the events is accurate and credible. He had familiarity with Bailey Brook and testified that "in the spring the brook would run full". He also testified that when he went to the premises in July the brush that was in the stream had created a barrier that caused the excessive rain to run easterly over land northerly of the northerly bound of the brook. In other words, the waters from hurricane Bertha could not move through the stream and in fact ran easterly over the Norwood estate and through the basement of the house until they exited either naturally because they overflowed the Bilco exit or after they were pumped for a considerable period of time. He persuaded this court that brush piled up against a ledge which he saw on the southerly bank of the stream and created the dam which caused the steam to fail to carry excess water towards Route 116.

The work he did for Paula Norwood on July 14th was necessary in order to prevent reoccurrences of the condition which he saw in July and which Ms. Norwood testified to. It is equally clear that there were some difficulties in April which arose as a result of melting snows and a generally wet spring. The July water destroyed Paula Norwood's furnace and threatened her power supply but her house survived.

As a result of actions by Great Northern she had a new furnace and some assistance with respect to her back yard which included a diversion

ditch dug by Mr. Coombs as well as a removal of the ledge which caused the brush hang-up which generated a portion of the problem which had occurred during hurricane Bertha.

The critical issue for the court to decide as it understands the arguments of Great Northern and Day's is whether or not there was any evidence that Day's was either negligent or breached its contract. The court concludes that Day's was not negligent and did not breach its agreement with Great Northern.

That factual finding is based upon the fact that the testimony of the various parties especially Bruce Morrison testified that Day who was a local contractor had done the cutting job "neatly". He did not indicate that he believed as a result of his review of conditions in April that the brush ought to be removed. Further, there is no concrete evidence that all of the brush which created the problem of July was brush cut by Day's. In fact, this court is not satisfied that there is sufficient evidence to generate an inference that all of the brush was Great Northern brush.

There is no question but that there was some refuse from the house. Things such as a chair and some plastic were in the ditch and could have generated some of the obstruction which prevented Bailey Brook from draining easterly. It is even less clear that there was no other brush which was not collected from the upland westerly of the power easement which was identified as a wetland.

The Court is satisfied that the work done by Day's was done in a satisfactory fashion and in accordance with the contract. The contract itself was a general one. The basic document is very large. See Defendant's exhibit #11. It was a writing sufficient to allow Great

Northern to engage Day's by a telephonic work order which was apparently the source of the contract in this case. That meant that Day's was governed by the written contract, Defendant's Exhibit #11 and that instrument would govern the scope of its responsibilities.

Great Northern argues several different provisions of the contract and specifically they include sections 2.1, 2.2, 8.3, 8.4, 12, 16.3, 25.1, 25.2, and 33. In this court's view the basis of the claim made by Great Northern depends upon a construction of article 33. The relevant language reads as follows:

> "contractor shall at all times keep the site free from accumulation of waste materials or rubbish and at the completion of the work, contractor shall remove all its rubbish from and about the premises and all its tools, construction equipment and surplus materials and shall leave the premises clean unless more exactly specified."

In this Court's view that language does not refer to the cut brush.

The Court is satisfied from the testimony of the witnesses that the parties contemplated cutting of brush and leaving it, both to cover the ground thereby reducing future growth and also to turn it into ground cover. That conclusion is based upon the testimony of Dennis Rosebush who said that in April when he viewed the premises the brush was "piled neatly". Renny Pelkey's analysis of the site throughout the years demonstrated that it was consistent with the conditions that existed when hurricane Bertha hit, and, but for Bertha, would have produced no unexpected problems. Bruce Morrison's testimony suggested that the job had been done in a proper fashion by Days.

As argued by Mr. Lister the contract was Great Northern's writing. Maine law provides that an ambiguous agreement must be construed most

strongly against a person responsible for its inaccuracies. "The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. He who speaks should speak plainly or the other party may explain to his own advantage." Monk vs Morton, 139 Me. 291, 294 (Me. 1943)."

Whether a term in a contract is ambiguous is an issue of law. Spottiswoode v. Levine, 730 A.2d 166, 172 (Me. 2000) . This Court concludes that the contract between the parties is ambiguous as a matter of law.

When a written agreement is ambiguous, the factfinder must determine the intent of the parties in entering that contract, and that determination is a question of fact. Spottiswoode, Id. To aid in construing the agreement, "the factfinder may 'entertain extrinsic evidence casting light upon the intention of the parties with respect to the meaning of the unclear language.' Bangor Publ'g Co. v. Union St.Market, 1998 ME 37, ¶5, 706 A.2d 595, 597. See Hilltop Sports Center, Inc. v. Hoffman et al., 2000 ME 30, ¶ 19, 20, 755 A.2d 1058, 1063 (Me. 2000). As noted above, this Court finds as a fact that there was no contract to remove the brush. Therefore, even if the removal of the brush would have prevented the loss to Paula Norwood, Day breached no agreement with Great Northern which resulted in their loss.

For all of the foregoing reasons, it is abundantly clear that the payments made by Great Northern were made as a result of its desires

given the circumstances relating to the land they owned which was in the condition for which they contracted it to be. That they elected to react to Paula Norwood's demands as a result of the events, unusual in nature and precipitated by hurricane Bertha were of no import to Days. Further, Great Northern never notified Day nor gave them any reason to believe that they had any exposure for the reparations which Great Northern unilaterally elected to make. Great Northern's election was of its own volition. The language of paragraph of 25.1 and 25.2 of the contract given the fact that there was no obligation under paragraph 33 means that the Great Northern was solely responsible for such sums as were paid.

Accordingly, judgment must be for Day's. The order will be on the cross claim of Great Northern, judgment is for Day's. Day's cross claim having been withdrawn is dismissed with prejudice. The clerk may incorporate the foregoing into the docket by reference pursuant to Rule 79(a), Maine Rules of Civil Procedure.

DATED: May 30, 2001

_____
Francis C. Marsano
Justice, Superior Court

Date Filed ___9/9/97___ ___PENOBSCOT___ Docket No. ___RE-97-63___
County

TITLE TO REAL ESTATE INVOLVED

Action ___REAL ESTATE - EASEMENT___

Assigned to Justice Francis C. Marsano

Crosssclaim

*GREAT NORTHER PAPER, INC. substituted in place of Bowater Incorporated - 10/10/00*

* BOWATER, INC. a/k/a GREAT NORTHERN PAPER COMPANY, INC. and DAY'S AUTO BODY d/b/a DAY'S CONSTRUCTION a/k/a DAY'S WELDING AND MACHINE

PAULA NORWOOD                    vs.

| | |
|---|---|
| **Plaintiff's Attorney** | **Defendant's Attorney** |
| RICHARD L. RHODA, ESQ.<br>P O BOX 743 - 45 COURT STREET<br>HOULTON ME 04730 | Gross, Minsky, Mogul & Singal, P.A.<br>23 Water Steet, P.O. Box 917<br>Bangor, Maine 04402-0917<br>*BY: Daniel A. Pileggi, Esq. w/draw2/13/01<br>FOR: Bowater, Inc. |

Gross, Minsky, Mogul PA
P O Box 917
Bangor ME 04402-0917
BY: George Schelling, Esq.
FOR: Bowater Inc.

~~Rella, Dostie & Tucker~~
~~1 Cumberland Place, Suite 308, PO Box 696~~
Bangor, Maine 04402-~~0696~~ P O BOX 2700
By: ~~John Batherson, Esq.~~/For: Day's Auto d
~~Jutie D. Farr, Esq. — 8/13/98~~
& Carl F. Rella, Esq.
Shaun B. Lister, Esq. **a/o** 10/26/00

| Date of Entry | |
|---|---|
| 9/9/97 | Complaint filed. |
| 9/9/97 | Officer's Return of Service filed (s.d. 9/3/97 by Carroll Day, Clerk of Day's Auto Body, Inc.) |
| 9/9/97 | Acknowledgment of Receipt of Summons and complaint as to Great Northern Paper, Inc. filed (s.d. 8/28/97 by Harry F. Geair, Associate General Counsel) |
| 9/10/97 | Case File Notice and Pretrial Scheduling Statement and Jury Demand form forwarded to Plaintiff's counsel. |
| 9/10/97 | Entry of Appearance of Daniel A. Pileggi, esq. on behalf of Defendant Bowat |
| 9/10/97 | Ex Pa     e to Answer Plaintiff's Compl. |
| 9/17/97 | Orde    it appearing that no notice<br>or he    at the time within which<br>the I    serve its answer or otherwise<br>plead    d from September 17, 1997,<br>to Oc    forwarded to attorneys<br>of re |
| 9/18/97 | Day's    omplaint filed. |
| 9/26/97 | Defen    ffirmative Defenses and<br>Cross    ossclaim) |
| 10/1/97 | Pretrial Scheduling Statement and Jury Demand filed by Plaintiff. No Jury Trial fee paid. |