[No. 6970–5–I.   Division One.   November 19, 1979.]

WILLIAM O. VOGT, ET AL, *Appellants,* v. AMANDA ESTHER
HOVANDER, *as Administratrix,* ET AL,
*Respondents.*

*Peter Jay Visser* and *Simonarson, Visser & Johnson,* for appellants.

*Christopher Fletcher,* for respondents.

CALLOW, C.J.—The plaintiffs, William and Blanche Vogt, appeal from the trial court's denial of their claim for recovery upon an installment note in a suit against the defendant, Amanda Esther Hovander as administratrix of the estate of Warren Hovander, deceased. The issues raised concern (a) the admissibility (under the deadman's statute) of evidence relating to payments allegedly made upon the note by the decedent, and (b) the effect of certain language in the promissory note.

On March 10, 1978, Mr. and Mrs. Vogt filed suit against Doreen Hovander Quiding, former wife of Warren Hovander, and Amanda Esther Hovander, as administratrix of the estate of Warren Hovander. The plaintiffs sought recovery on a promissory note dated March 15, 1969, signed by Doreen and Warren Hovander, and reciting in part as follows:

> FOR VALUE RECEIVED, I promise to pay to WILLIAM VOGT and BLANCHE VOGT, his wife, or order, the sum of FIVE THOUSAND AND NO/100 DOLLARS with interest thereon at the rate of 9 1/2 per cent. per annum from date hereof; payable as follows:

One–half of total sum plus interest at 9 1/2% due on or before September 15, 1969. The remainder of the total sum is due one year later, September 15, 1970. Money is to come from the cottage rental proceeds.

The estate of Mr. Hovander, who died on July 27, 1977, had previously rejected the Vogts' creditor's claim on the note.

An order of default was entered against Mrs. Quiding on July 26, 1978, and trial commenced against the estate. In order to counter the defendant's affirmative defense of the statute of limitations, Mr. Vogt attempted to testify that Mr. Hovander had made a payment of 1 year's interest on the promissory note in October of 1970, and a payment of $1,000 together with interest on the unpaid balance in the middle of October 1971.

The plaintiffs offered to prove that the payments were personally made by Mr. Hovander to Mr. Vogt. The plaintiffs also attempted to introduce a record of payments kept by Mr. Vogt. On the defendant's voir dire of Mr. Vogt during the plaintiffs' offer of proof, Mr. Vogt testified that certain of the penciled–in entries in the payments book were made 2 years and others 1 year after the payments claimed to have been made by Mr. Hovander. The trial court disallowed the testimony upon the defendant's objection that its admission would violate the deadman's statute (RCW 5.60-.030). The plaintiffs rested.

The defendant's motion for dismissal was granted on the basis that recovery was barred by the 6–year statute of limitations. RCW 4.16.040. The plaintiffs objected that the defendant could not avail itself of the statute of limitations until it had proved each of the statute's elements, the first being that the statute had begun to run. The plaintiffs argued that the defendant had to prove the satisfaction of the express condition precedent to payment evidenced by the note's language that "[m]oney is to come from the cottage rental proceeds." The court found that the note was unconditional on its face. The plaintiffs Vogt were denied recovery and the defendant estate was awarded costs.

The plaintiffs raise these issues: (1) whether testimony by a party in interest regarding a decedent's payments in partial satisfaction of the decedent's promissory note to the witness is testimony as to a "transaction" with the decedent, therefore rendering it inadmissible under RCW 5.60-.030; (2) whether an interested party's record of a decedent's payments on his promissory note is testimony as to a "transaction" with a deceased person under RCW 5.60.030; and (3) whether a promissory note's language that "[m]oney is to come from the cottage rental proceeds" sets up as a matter of law an express condition precedent to the maker's duty to pay on the note, thereby making it incumbent upon the maker to prove the satisfaction of the condition in order to avail himself of the statute of limitation as an affirmative defense to a suit seeking recovery on the note.

> *Is testimony by a party in interest regarding a decedent's in–hand payments in partial satisfaction of the decedent's promissory note to the witness testimony to a "transaction" with the decedent, rendering it inadmissible under RCW 5.60.030?*

The plaintiffs assign error to the trial court's rejection of Mr. Vogt's testimony on the basis of RCW 5.60.030, which provides in relevant part:

[I]n an action . . . where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made by him or her, or in his or her presence, by any such deceased . . .

The plaintiffs admit that Mr. Vogt's testimony as to the decedent's payments would be ruled inadmissible in other jurisdictions as testimony to a "transaction," *see* Annot., 84 A.L.R.2d 1356, § 8[b] (1962); 97 C.J.S. *Witnesses* § 221, at 688 & n.92 (1957). However, they argue that the rule of *Ah How v. Furth,* 13 Wash. 550, 43 P. 639 (1896), should be

extended to include express contracts. They also propose that the meaning of "transaction" within the deadman's statute should be limited to the principal event or occurrence that is the subject of the suit without regard to the surrounding circumstances, citing 5 R. Meisenholder, Wash. Prac. § 169 (1965).

*Ah How v. Furth, supra,* involved an action by the servant of a decedent against the decedent's estate for recovery on an implied contract for services rendered. The decision held that the plaintiff's testimony that he did domestic chores at the decedent's home was not testimony as to a "transaction" because the testimony "related solely to acts of the witness alone". *Ah How v. Furth, supra* at 554. *See also Richards v. Pacific Nat'l Bank,* 10 Wn. App. 542, 548, 519 P.2d 272 (1974). *King v. Clodfelter,* 10 Wn. App. 514, 516–17, 518 P.2d 206 (1974), which held admissible the plaintiff's testimony as to the work he performed for the decedent, states that the rule since *Ah How* has been that a party may testify as to work performed for a deceased person and "about any payment received from the decedent for the work". The language concerning payment is dicta. In any event, *King v. Clodfelter* does not support the plaintiffs' position because it qualifies its statement concerning payment by its observation that testimony may not involve acts of the decedent. *King v. Clodfelter, supra* at 517. The payments allegedly made personally by Mr. Hovander were acts of the decedent. Even were the rule of *Ah How* to be extended to express contracts, Vogt's testimony would not be covered because the testimony was not limited to "acts of the witness alone". *Ah How v. Furth, supra* at 554.

The plaintiffs cite us to *Woeppel v. Simanton,* 53 Wn.2d 21, 330 P.2d 321 (1958), and *Boettcher v. Busse,* 45 Wn.2d 579, 277 P.2d 368, 49 A.L.R.2d 191 (1954). The *Boettcher* case was an action to establish an oral contract to devise wherein the plaintiff called the estate's coexecutor as an adverse witness. The coexecutor testified to the time and nature of the work done for the deceased by the plaintiff

and that the decedent had agreed upon a wage of 30 cents per hour. On cross–examination, the witness testified to the compensation received by the plaintiff. Holding that this testimony did not constitute a waiver of the deadman's statute, it was said that the testimony "did not tend to prove that a contract had been made, under which decedent agreed to will property to [the plaintiff]." *Boettcher v. Busse, supra* at 583. In *Woeppel,* which was an executor's action to recover funds of the decedent held by the defendants, the defendants attempted to show the existence of an implied–in–fact contract so as to enable them to retain all or a portion of the money they held. The executor called one of the defendants as an adverse witness and inquired as to what he had received from the decedent for room and board and whether he had billed her for any additional sum. *Woeppel v. Simanton, supra* at 25. It was held that this did not constitute a waiver of the deadman's statute. *Woeppel v. Simanton, supra* at 26.

5 R. Meisenholder, *supra* at § 169, questions the authority of *Boettcher v. Busse, supra,* and *Woeppel v. Simanton, supra.* We agree that the basic test for determining whether testimony relates to a "transaction" is whether the deceased, if living, could contradict the witness of his own knowledge. *In re Estate of Wind,* 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947); *Diel v. Beekman,* 7 Wn. App. 139, 152, 499 P.2d 37 (1972). Under this test the decedent could contradict of his own knowledge testimony whether he had personally paid the interested party a sum of money. *See Walker v. Sieg,* 23 Wn.2d 552, 161 P.2d 542 (1945); *Lee v. Northwest Trust & Sav. Bank,* 128 Wash. 214, 222 P. 489 (1924); *Goldsworthy v. Oliver,* 93 Wash. 67, 160 P. 4 (1916); *Fies v. Storey,* 21 Wn. App. 413, 418–19, 585 P.2d 190 (1978). We conclude that the trial court was correct in excluding testimony by the plaintiff, a "party–in–interest," that he had received payments upon the debt when such testimony might have been contradicted by the decedent were he alive, but now could not be.

*Is an interested party's record of a decedent's pay-*
*ments on his promissory note testimony as to a*
*"transaction" with a deceased person under RCW*
*5.60.030?*

■ The plaintiffs contend it was error to exclude Mr. Vogt's account book from admission into evidence. They rely upon *Ah How v. Furth, supra* at 554, which states:

> [Plaintiff's] exhibit A, which purported to be an account book kept by the [plaintiff], was properly received in evidence, and its admission was not in effect permitting the plaintiff to testify to a transaction with the deceased.

The account book presumably showed the time and dates that the plaintiff worked, and the pay that he had received from the decedent. *Miller v. O'Brien,* 17 Wn.2d 753, 764, 137 P.2d 525 (1943); *Goldsworthy v. Oliver, supra* at 71. The plaintiffs argue that *Ah How* should be extended to include express contracts. Even assuming the applicability of this part of *Ah How*'s holding to express contracts, it has been limited to books of account kept in the ordinary course of business, a limitation fatal to the plaintiffs' assignment of error.

In *Goldsworthy v. Oliver, supra* at 70, in order to defeat the plaintiff's claim for payment on a note, Mr. Oliver produced and was allowed to introduce into evidence a book of account between himself and the decedent, Mr. Mack. The decision held that the admission of this book was erroneous, and in so holding strictly limited the rule of *Ah How v. Furth, supra,* as follows:

> We think that case goes to the limit of the rule, and that the rule ought not to be further extended. In this case the book offered in evidence was kept by a man who was engaged in business in the city of Bremerton. . . . He was a man of affairs, was director in the Bank of Bremerton, and was apparently a careful business man.
>
>   . . .
>   . . . [T]his book does not appear upon its face to be a tradesman's book, kept in the line of business of Mr. Oliver, but is at most a private account, kept by him for moneys advanced to Mr. Mack during his lifetime.

. . .
. . . [T]he book here offered was not admissible because it was clearly not a shopbook. . . .

. . . To admit this book in evidence would, in effect, authorize a person before the trial of an action to write a statement upon a paper or in a book, and then by testifying that the statement was correct and the items were entered at the time of the different dates therein, make a book admissible in evidence as a trade–book. In other words, to declare this book, under the circumstances, admissible is to declare an easy mode of avoiding the statute. We are satisfied that the rule in the *Ah How* case should not control this case, and that the admission of this book in evidence was error.

*Goldsworthy v. Oliver, supra* at 71–73.

Similarly, in *Sanborn v. Dentler,* 97 Wash. 149, 166 P. 62, 6 A.L.R. 749 (1917), a physician's action against an insane person's guardian to recover for services rendered prior to the adjudication of insanity, the court held that entries in the physician's account book were competent evidence under the rule of *Ah How.* The account book, which was kept for all patients in the ordinary course of business, indicated a patient's visits, ailments, and services received. *Sanborn v. Dentler, supra* at 152, 155. Although the court justified the admission of the book upon the reasoning of *Ah How v. Furth, supra* at 554, that the testimony "related solely to acts of the witness alone," a questionable justification in light of both the contradiction test set forth in *In re Estate of Wind, supra,* and the implicit renunciation of this rationale in *Goldsworthy v. Oliver, supra* at 73, it is sufficient for the present purposes to note that Mr. Vogt's book does not qualify as a book kept in the ordinary course of business.

The plaintiffs have not included Mr. Vogt's account book in the record on appeal. Although the trial court entered no written findings concerning the character of Mr. Vogt's account book, we may resort to the trial court's oral decision to aid in our understanding of the written findings, *e.g., Port Townsend Publishing Co. v. Brown,* 18 Wn. App.

80, 85, 567 P.2d 664 (1977). During the course of its ruling rejecting admission of the payments book, the trial court stated that the book was self–serving. Reference was assumedly being made to Mr. Vogt's testimony on voir dire as to the time and manner of the book's preparation. *McDonald v. McDonald,* 119 Wash. 396, 403, 206 P. 23 (1922), requires that to qualify for admission despite the deadman's statute account books must be "kept in the usual course of business, and hence in no manner self–serving." *See also* RCW 5.45.020. Even assuming the continuing viability of the business records exception to the deadman's statute,[1] the plaintiffs have failed to satisfy that exception.

> *Does a promissory note's language that "money is to come from the cottage rental proceeds" set up as a matter of law an express condition precedent to the maker's duty to pay on the note, thereby making it incumbent upon the maker to prove the satisfaction of the condition in order to avail himself of the statute of limitation as an affirmative defense to a suit seeking recovery on the note?*

The plaintiffs assign error to the trial court's finding that the Hovanders' installment note is unconditional. Because the note is conditional, the plaintiffs argue, the trial court erred in dismissing their case absent proof by the defendant that the condition triggering the statute of limitations—*i.e.,* the availability of cottage rental proceeds—had been fulfilled. The defendant argues that the note's language is merely a recital of the contemplated source of repayment of the note.

*Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.,* 13 Wn.2d 370, 389, 125 P.2d 668 (1942), states that the affirmative defense of the statute of limitations

---

[1] It is stated that the deadman's statute was commonly and early on thought not to apply to a party's books of account on the theory that the use of the books was not a "testifying" within the statute's terms, a result that may well be questioned in the author's opinion. 5 J. Wigmore, *Evidence* §§ 1554, 1559 (1974).

must be proved by the party asserting it, and that where payment is conditioned upon the existence of a particular fund the debtor cannot avail himself of the statute of limitations without showing that the fund has come into existence. The reason for the latter rule is that a cause of action on a conditional contractual promise does not accrue and the statute of limitations begin to run until the condition is complied with. *Perry v. Hillman,* 153 Wash. 689, 699–700, 280 P. 346 (1929). Accordingly, were payment of the Hovander note conditioned upon the availability of cottage rental proceeds, the trial court would have been in error in dismissing the plaintiffs' case on the basis of the statute of limitations without having first required the defendant to prove the condition's fulfillment.

In the *Bellingham Securities* case a condition precedent was found to exist by virtue of a lease provision that provided that money otherwise due and payable could be withheld if the lessee's reasonable requirements dictated. *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc., supra* at 389. The court stated that the nonexistence of reasonable requirements was a condition precedent to the lessee's duty to pay a certain royalty. *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc., supra* at 391. The language there, unlike here, was plain and unambiguous.

The installment note contains an express promise to pay the note in installments on certain dates and then states, "Money is to come from the cottage rental proceeds." It is unclear from the face of the instrument whether the parties intended the promise to pay to be conditioned only upon the availability of cottage rental proceeds or whether the language was intended merely as an indication of the source from which funds were expected. It is possible that the parties intended that the Hovanders apply the cottage rental proceeds first to their obligation on the note and then to their own purposes. The note is ambiguous.

As such, the applicable rule to a suit on a note between the maker and payee, which the parties do not argue to be governed by the provisions of the Uniform Commercial Code,[2] is that the parties' intention or lack thereof to condition the duty to pay is to be gathered from the parties' situation, their relationship, the subject matter, and their intended purposes as revealed by the evidence. *See generally Noord v. Downs,* 51 Wn.2d 611, 614, 320 P.2d 632 (1958). An intent to create a condition is often revealed by such phrases and words as "provided that," "on condition," "when," "so that," "while," "as soon as," and "after." *Ross v. Harding,* 64 Wn.2d 231, 237, 391 P.2d 526 (1964). Unlike in those cases where payment is provided "only" from a particular fund, the courts have considered extraneous evidence and circumstances in construing liability where the word "only" did not appear. *United States ex rel. Moseley v. Mann,* 197 F.2d 39, 41 & nn.1 & 2 (10th Cir. 1952). *See also Hood v. Gordy Homes, Inc.,* 267 F.2d 882, 886 (4th Cir. 1959). In *Webb & Sons, Inc. v. Hamilton,* 30 App. Div. 2d 597, 597, 290 N.Y.S.2d 122, 123–24 (1968), a promise to pay "five thousand ($5,000) * * * *from the jobs now under construction*" was stated to create, as between the maker and payee, a question of fact as to whether the parties intended to create a condition. Similarly, the statement that

"We hereby authorize Chester Batchelor to deliver $114 to M. N. Knuppenberg out of the money to be loaned A. T. Thomas and D. H. Lee, or his brother."

---

[2]The note falls within the provisions of RCW 62A.3–105(1)(f) rather than RCW 62A.3–105(2)(b); it is, therefore, unconditional. *See Manker v. American Sav. Bank & Trust Co.,* 131 Wash. 430, 230 P. 406, 42 A.L.R. 1021 (1924), and cases cited therein; *Van Tassel v. McGrail,* 93 Wash. 380, 381, 160 P. 1053 (1916); *First Nat'l Bank v. Sullivan,* 66 Wash. 375, 119 P. 820 (1911); RCWA 62A.3–105(1)(f) & (2)(b), Washington Comments at 38–39. However, the Uniform Commercial Code's provisions on conditions are conditions of negotiability, RCW 62A.3–102(1)(e), –104(1)(b), –105, the purpose of which is to assure the free and ready flow of commercial paper, W. E. Britton, *Bills and Notes* 30 (2d ed. 1961), a consideration particularly relevant to a possible holder in due course, RCW 62A.3–305, –306(c), but not as between the maker and the payee.

was held in light of the memorandum and the facts not to show that the $114 was to be repaid only in case the loan was made. *Knuppenberg v. Lee,* 74 Wash. 636, 637–38, 134 P. 508 (1913). Whether payment on the Hovander note was intended to be conditioned upon the availability of cottage rental proceeds is a question of fact.

The trial court correctly ruled that the statute of limitation was available to the defendant as an affirmative defense in the absence of proof from the plaintiffs that payment of the promissory note was intended to be conditioned upon the availability of cottage rental proceeds. In case of doubt as to whether words create a condition or promise, doubt is resolved in favor of the creation of a promise. *Ross v. Harding, supra* at 236. The trial court correctly ruled that payment on the note had not been proven to be conditioned upon the availability of cottage rental proceeds.

The judgment is affirmed.

SWANSON and WILLIAMS, JJ., concur.