[No. 29767-1-II.   Division Two.   August 24, 2004.]

TACOMA NORTHPARK, L.L.C., *Respondent*, v. NW, L.L.C., *Respondent*, UNITED BUILDERS OF WASHINGTON, INC., ET AL., *Appellants.*

74

*Kelly A. Delaat-Maher* and *Thomas L. Dickson* (of *Dickson Maher Ingels, L.L.P.*), for appellants.

*Matthew L. Sweeney*; and *Thomas H. Oldfield* (of *Sloan Bobrick Oldfield & Helsdon, P.S.*), for respondents.

QUINN-BRINTNALL, C.J. — O'Connor & Associates, L.L.C., (O'Connor) appeals a trial court's finding that NW, L.L.C., (NW) did not breach its agreement to sell O'Connor real property it owned in Tacoma. An addendum to the purchase agreement stated that the offer to sell was subject to NW securing final plat approval from the City of Tacoma. NW encountered financial difficulties and was unable to complete plat approval. When O'Connor declined NW's offer to purchase the property "as is" with O'Connor completing plat approval, NW sold the property to Tacoma Northpark, L.L.C. Tacoma Northpark filed a quiet title action against several parties, including O'Connor, and O'Connor filed a counterclaim and a cross claim for breach of contract against NW and Tacoma Northpark.

Because final plat approval was a condition precedent to the O'Connor/NW purchase agreement, the trial court properly ruled that NW's good faith effort to obtain final plat approval excused its failure to satisfy its obligations under the purchase agreement and that no breach of contract occurred. Thus, we affirm.

## FACTS

On November 22, 1999, O'Connor entered into an agreement to purchase property from NW. NW had filed a preliminary plat with the City that proposed to divide the property into 23 lots for future residential development. After completing the land purchase, O'Connor planned to build homes for sale. One of the purchase agreement's addenda stated that the offer was subject to final plat approval and that NW warranted that final plat approval would occur prior to the closing date:

> This Offer is subject to Seller providing the final plat approval by City of Tacoma and engineering as-built for this plat and deliver to Buyer (23) buildable lots to include all curbing, paved roadway, and all utilities to the lots.
>
> . . . .

This offer is subject to Buyer obtaining Financing for construction loans.

. . . .

The transaction is contingent upon the Purchaser obtaining engineer's and/or architect's feasibility reports, utility agreements, percolation tests, if required and determining the availability of permits for construction.

Ex. 1, Addendum A.

Closing was originally set for February 15, 2000. On December 21, 1999, both parties agreed to put the feasibility study on hold pending the City's final plat approval. But the City did not approve the final plat and closing was further delayed.

NW and O'Connor eventually agreed to close on four lots on June 15, 2000; six lots on August 15, 2000; eight more lots on December 1, 2000; and the last five lots on February 1, 2001. The City never issued final plat approval and the sale did not close. But O'Connor assigned two of the future lots to United Builders of Washington, Inc. (United) anyway. To effect these transfers, NW signed two statutory warranty deeds conveying four lots by metes and bounds: two lots were conveyed to O'Connor and two lots were conveyed to United. The City issued building permits under the Model Home Ordinance that allowed O'Connor and United to build four model homes on these lots.

NW hired the engineering firm Larson and Associates Land Surveyors and Engineers, Inc. (Larson) to complete the platting process and obtain final plat approval from the City. But NW encountered financial difficulties and could not pay to complete the platting process. NW then offered to sell the property to O'Connor "as is"—with O'Connor being required to complete the plat process. O'Connor declined the offer and NW sold the land to Tacoma Northpark.[1] NW did not inform Tacoma Northpark of its prior purchase agreement with O'Connor.

---

[1] By Purchase and Sale Agreement in February 2001 and Statutory Warranty Deed in April 2001.

On August 31, 2001, Tacoma Northpark filed a quiet title action against several parties, including O'Connor, NW, United, and several lending organizations. O'Connor and United counterclaimed against Tacoma Northpark and cross claimed against NW for breach of contract. Trial was to the court[2] which found that NW had not breached the property sale agreement with O'Connor because NW acted with "good faith" in unsuccessfully attempting to secure final plat approval. O'Connor and United appeal.[3]

## ANALYSIS

BREACH OF CONTRACT CLAIM

O'Connor contends that the trial court erred by holding that NW's good faith effort excused its failure to obtain final plat approval and erred in finding that NW had not breached the purchase agreement. O'Connor argues that to prevail against its breach of contract claim, NW had to prove that circumstances beyond its control made it impossible for it to obtain final plat approval and that NW's financial difficulties did not satisfy this impossibility standard.

But whether NW was required to prove impossibility of performance, or only that it had made a good faith effort to obtain final plat approval, depends on whether the addendum to the purchase agreement dealing with "final plat approval" is a promise (contractual duty) or an express condition precedent. *See Jones Assocs. v. Eastside Props., Inc.*, 41 Wn. App. 462, 468, 704 P.2d 681 (1985). If it is a promise or contractual duty, NW must prove impossibility of performance. And mere financial difficulty is not suffi-

---

[2] Tacoma Northpark waived its demand for a jury trial.

[3] NW first claims that O'Connor failed to properly perfect his appeal by prematurely filing his notice of appeal before the trial court entered the necessary findings of fact and conclusion of law. The trial court entered its judgment on November 8, 2002, but did not enter findings of fact until January 17, 2003. O'Connor filed a notice of appeal on December 9, 2002. A party may appeal a final judgment to this court as a matter of right. RAP 2.2(a)(1). A notice of appeal filed after the announcement of a decision but before its entry is premature and is treated as if filed the day following entry of the decision. RAP 5.2(g).

cient to prove such impossibility of performance. *Carpenter v. Folkerts*, 29 Wn. App. 73, 77, 627 P.2d 559 (1981). But if it is a condition precedent, NW need only establish that it made a good faith effort to satisfy the condition by obtaining final plat approval.

▋ "Conditions precedent" are "those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Ross v. Harding*, 64 Wn.2d 231, 236, 391 P.2d 526 (1964). In contrast, a breach of a contractual obligation subjects the promisor (NW) to liability for damages, but it does not necessarily discharge the other party's (O'Connor's) duty of performance. But the nonoccurrence of a condition precedent prevents the promisor (NW) from acquiring a right (to require O'Connor to purchase the property) or deprives it of one, but it does not subject the promisor (NW) to liability. *Ross*, 64 Wn.2d at 236 (Whether a provision in a contract is a condition, the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances.); *Jones Assocs.*, 41 Wn. App. at 466 (quoting 5 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 663, at 127 (Walter H. E. Jaeger ed., 3d ed. 1961)).

It is clear that NW's failure to procure final plat approval excused O'Connor from any contractual obligations. But NW is not seeking to enforce the purchase agreement. Instead, is O'Connor entitled to damages for breach of the contract when NW's financial difficulties caused it to fail to obtain final plat approval? If final plat approval is a contractual obligation, O'Connor can recover damages because financial difficulties do not establish impossibility of performance. *Carpenter*, 29 Wn. App. at 77. If, however, final plat approval is a condition precedent, and NW acted in good faith in attempting to obtain final plat approval, O'Connor is not entitled to recover damages. *Ross*, 64 Wn.2d 231.

The construction of a contract provision is a matter of law and our review is de novo. *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wn.2d 129, 133, 994 P.2d 833 (2000). Whether a contract provision is a condition precedent or a contractual obligation depends on the intent of the parties. We determine this intent from a fair and reasonable construction of the language used, taking into account all the surrounding circumstances. *See Koller v. Flerchinger*, 73 Wn.2d 857, 860, 441 P.2d 126 (1968). Where it is doubtful whether words create a promise (contractual obligation) or an express condition, we will interpret them as creating a promise. *Ross*, 64 Wn.2d 231. But words such as "provided that," "on condition," "when," "so that," "while," "as soon as," and "after" suggest a conditional intent, not a promise. *Jones Assocs.*, 41 Wn. App. at 467 (citing *Vogt v. Hovander*, 27 Wn. App. 168, 178, 616 P.2d 660 (1979) with approval).

An addendum to the purchase agreement states:

> This Offer *is subject to* Seller providing the final plat approval by City of Tacoma and engineering as-built for this plat and deliver to Buyer (23) buildable lots to include all curbing, paved roadway, and all utilities to the lots.
>
> . . . .
>
> This offer *is subject to* Buyer obtaining Financing for construction loans.
>
> . . . .
>
> The transaction *is contingent upon* the Purchaser obtaining engineer's and/or architect's feasibility reports, utility agreements, percolation tests, if required and determining the availability of permits for construction.

Ex. 1, Addendum A (emphasis added).

Although the addendum does not use the express words identified in *Vogt*, the words "subject to" and "contingent upon" leave no doubt that at the time of execution the parties intended that no sale would take place until these conditions were satisfied. *See Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Thus, until NW satisfied the condition of obtaining final plat approval for 23 buildable

lots from the City, the offer did not ripen into a promise. Under the O'Connor/NW purchase agreement, final plat approval was a condition precedent, not a contractual promise.

The doctrine of impossibility and impracticability discharges a party from contractual obligations when a basic assumption of the contract is destroyed and such destruction makes performance impossible or impractical, provided the party seeking relief does not bear the risk of the unexpected occurrence. *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 363-64, 705 P.2d 1195, 713 P.2d 1109 (1985). Performance of a contract is excused under this impossibility doctrine only on a showing of "extreme and unreasonable difficulty, expense or injury." *Pub. Util. Dist.*, 104 Wn.2d at 364. Performance is not excused merely because it became "more difficult or expensive than originally anticipated" to keep contractual obligations. *Pub. Util. Dist.*, 104 Wn.2d at 364.

██ While we agree with O'Connor that financial inability is not equivalent to impossibility, and that NW failed to prove impossibility of its performance, here impossibility is not the proper standard. Good faith is the standard that governs review of NW's failure to satisfy the condition precedent that it obtain final plat approval for 23 buildable lots.

In the cases O'Connor relies on, the defendants claimed that impossibility excused their obligation to perform the condition precedent. *See, e.g., Cannon v. Huhndorf*, 67 Wn.2d 778, 782, 409 P.2d 865 (1966) (court rejected promisor's claim of impossibility because it was unable to fulfill condition precedent and secure financing for a construction project); *Carpenter*, 29 Wn. App. at 75-77 (court rejected a promisor's claim of impossibility when it was financially unable to fulfill the condition precedent of conveying unencumbered property when property was encumbered without promisee's knowledge at the time of the contract's formation). In these cases, the defendants did not argue that their good faith efforts should relieve them of liability; instead, they defended as if impossibility were the proper

standard necessary to excuse their failure to satisfy a condition precedent. The reviewing court merely applied the standard they asserted. *See Cannon*, 67 Wn.2d at 782; *Carpenter*, 29 Wn. App. at 77.

But in *CHG International, Inc. v. Robin Lee, Inc.*, 35 Wn. App. 512, 667 P.2d 1127, *review denied*, 100 Wn.2d 1029 (1983), we applied the good faith standard to affirm the trial court's dismissal of the appellant's claim of breach of contract based on the unfulfilled condition precedent where the trial court found that respondent had made a good faith effort to fulfill the condition precedent. 35 Wn. App. at 515. Consistent to this holding, we hold here that the proper standard to review a promisor's failure to fulfill a condition precedent is good faith, not impossibility.[4]

Here substantial evidence supports the trial court's finding that NW made a good faith, albeit unsuccessful, effort to secure final plat approval for 23 buildable lots. Therefore, the trial court correctly applied the appropriate standard when it held that NW did not breach the purchase agreement and O'Connor was not entitled to damages for NW's failure to satisfy a condition precedent to the offer for sale of the property.

EQUITABLE ESTOPPEL

O'Connor next claims that because NW partially performed the contract, by transferring four lots to O'Connor and United by metes and bounds and inducing it to build on those four lots, that NW is "estopped from raising [performance of the condition precedent] as an affirmative defense" to the action. Br. of Appellant at 19. NW counters that it transferred the lots at O'Connor's request and, thus, could not have induced O'Connor's decision to prematurely build the model homes. Equitable estoppel is defined as:

---

[4] Failure to satisfy a condition precedent does not excuse the promisor's performance if the failure was the result of misconduct or fault of the promisor. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 635-36, 700 P.2d 338 (1985); *CHG*, 35 Wn. App. at 515. But O'Connor does not assert that failure was the result of NW's misconduct or fault.

"[T]he principal [sic] by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed."

*Ross*, 64 Wn.2d at 238 (quoting 19 AM. JUR. § 34, at 634). The elements of equitable estoppel are: (1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action taken in reliance on that admission, statement, or act; and (3) injury to the relying party by allowing the other party to repudiate or contradict the prior act. *Bd. of Regents of Univ. of Wash. v. City of Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987). O'Connor asserts but has not demonstrated any of these elements. The record shows that O'Connor requested the parcel transfer knowing that NW had not secured final plat approval. O'Connor's equitable estoppel claim fails.

TACOMA NORTHPARK CLAIMS

██ As to Tacoma Northpark, O'Connor argues that NW implicitly assigned the purchase agreement to Tacoma Northpark and that, by the assignment, Tacoma Northpark assumed NW's obligations under the agreement, including the requirement that it sell the lots to O'Connor. But the undisputed evidence supports the trial court's finding that NW sold the property to Tacoma Northpark by Purchase and Sale Agreement in February 2001 and by Statutory Warranty Deed in April 2001, and NW "did not assign the Purchase and Sale Agreement between NW, L.L.C. and O'Connor & Associates to Tacoma Northpark, and Tacoma Northpark did not intend to accept assignment of that contract." Clerk's Papers at 268. *See Lewis v. Boehm*, 89 Wn. App. 103, 107, 947 P.2d 1265 (1997) (the assignee

does not assume the assignor's liabilities without express assumption).

ATTORNEY FEES

■ O'Connor, NW, and Tacoma Northpark all request attorney fees under RAP 18.1. A prevailing party may recover attorney fees only if provided by statute, agreement, or equitable principles. *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001), *review denied*, 146 Wn.2d 1008 (2002). RCW 4.84.330 provides that:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

And here the purchase agreement states, "If Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses." Ex. 1 at 4. The prevailing party is the party in whose favor final judgment is rendered. RCW 4.84.330; *Meenach v. Triple "E" Meats, Inc.*, 39 Wn. App. 635, 640, 694 P.2d 1125, *review denied*, 103 Wn.2d 1031 (1985). NW prevailed under the agreement both at trial and on appeal and is, therefore, entitled to its attorney fees.

The trial court also awarded Tacoma Northpark attorney fees at trial under RCW 4.84.330, and O'Connor has not assigned error to the ruling. But because O'Connor has no contractual relationship with Tacoma Northpark and no other basis for an award of attorney fees has been presented to us, we deny Tacoma Northpark's request for attorney fees on appeal.

The trial court properly applied the good faith standard to its review of NW's failure to fulfill a condition precedent to its purchase agreement with O'Connor, and we affirm.

ARMSTRONG, J., and SEINFELD, J. Pro Tem., concur.