**KEYSTONE FRUIT MARKETING, INC.; Bob N. Evans, Plaintiffs–counter–defendants–Appellees,**

v.

**William G. BROWNFIELD; Janet H. Brownfield, Defendants–counter–claimants–Appellants,**

and

**Janet M. Clayton, Defendant–counter-claimant,**

v.

**Walla Walla River Keystone, LLC, a Pennsylvania limited liability company; Walla Walla River Farms, LLC, a Washington limited liability company, Third-party-defendant.**

No. 07–35239.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2008.

Filed Sept. 2, 2008.

George M. Ahrend, Esquire, William A. Gilbert, Esquire, Dano Gilbert & Ahrend PLLC, Moses Lake, WA, David J. Groesbeck, Esquire, David J. Groesbeck, PS, Spokane, WA, for Plaintiffs–counter–defendants–Appellees.

John G. Schultz, Esquire, Andrea J. Clare, Esquire, Leavy Schultz David & Fearing, Kennewick, WA, for Defendants–counter–claimants–Appellants.

John W. Lohrmann, Esquire, Lohrmann Law Offices, Walla Walla, WA, for Janet M. Clayton.

460

Before: PREGERSON, HALL, and NOONAN, Circuit Judges.

## MEMORANDUM *

William G. Brownfield appeals summary judgment granted Bob Evans on certain notes signed by Brownfield acknowledging indebtedness to Evans. The parties are familiar with the facts. We proceed with the law.

Under § 3–108 of the Uniform Commercial Code (the UCC), adopted by Washington as WASH. REV.CODE ANN. § 62A.3–108 (2008), "an instrument is not payable on demand where it is payable upon a contingency limiting the discretion of the holder to determine the time of payment." 6 WILLIAM D. HAWKLAND & LARRY LAWRENCE, UNIFORM COMMERCIAL CODE SERIES § 3–108:1 (1999). Six notes signed by Brownfield each stated that they were "to be paid from the first profits generated in my name" from a partnership formed by Evans with Brownfield or as "otherwise agreed." As there were no profits, the condition was not met. No evidence was tendered as to what was otherwise agreed. The notes, therefore, were not payable on demand.

Evans argues (1) that Brownfield made some payments on the notes and (2) that the corporate minutes refer to Brownfield's indebtedness. Neither observation serves to transform the notes into demand obligations. A trial is necessary to establish the facts of Brownfield's obligations.

A fall-back agreement of Evans is that Brownfield asked the court to rule on the notes as a matter of law. His request was a request to apply the law correctly. He did not waive any appeal if the court were wrong.

Evans responds that the court was right because it followed *Vogt v. Hovander,* 27 Wash.App. 168, 616 P.2d 660 (1979). This decision, however, is unhelpful to resolution of our case. First, the note in question there was materially different from the notes at issue here and was actually found ambiguous, requiring evidence outside the note to understand. Second, the question before the Washington appellate division for decision was the relation of the note to the statute of limitations. Third, the note referred to the proceeds of rental property and as the state court expressly noted, "the parties do not argue [the note] to be governed by the provisions of the Uniform Commercial Code." *Id.* In an ordinary commercial dispute such as the one in our case, the UCC is the governing law. *See, e.g., In re Freeborn,* 94 Wash.2d 336, 617 P.2d 424 (1980). Accordingly, *Vogt* is irrelevant here. The UCC controls. Brownfield may well have obligations. They cannot be summarily determined.

REVERSED and REMANDED.

HALL, Circuit Judge, dissenting:

I see this case differently than the majority, and therefore must respectfully dissent.

## I.

Defendant William Brownfield owned a one-third share in Walla Walla Keystone, LLC, as did Plaintiff Bob Evans and a third partner, Kurt Schweitzer. Evans and Schweitzer contributed start-up capital for the firm. Instead of paying his share out of pocket, Brownfield asked Ev-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

ans to loan him the money—totaling approximately $200,000—on the expectation that the debt would be repaid when Walla Walla Keystone became profitable. The loans from Evans were evidenced by six documents executed by Brownfield. These documents each were titled "Promissory Note" and recite the amount "borrow[ed]." The first two documents provide: "This amount is to be repaid in full from the first profits generated in [Brownfield's] name from Walla Walla Keystone." The last four documents include this language, and add "or as otherwise agreed."

Before executing the fifth note, Brownfield agreed to make payments on the debts, even though Walla Walla Keystone was never profitable. Brownfield followed this agreement and paid Evans approximately $40,000 by allowing Evans to withhold money from the paychecks he was receiving from another company, Keystone Fruit Marketing. These paychecks were substantial, as Brownfield's annual salary was approximately $350,000. Brownfield also paid Evans a lump sum of approximately $60,000 with the proceeds of a second mortgage on his house.

The parties' relationship soon deteriorated, however. Brownfield's employment with Keystone Fruit Marketing was eventually terminated, and he stopped sending money to Evans. Evans sued on the notes in federal court, invoking diversity jurisdiction and joining his suit with various claims asserted by Keystone Fruit Marketing. Brownfield defended against Evans' claims with two related arguments: (1) that the notes did not evidence a promise to repay the loans personally, and (2) that any promise was conditioned on either (a) there actually being profits from Walla Walla Keystone or (b) the parties reaching some other agreement that Brownfield would pay. The district court disagreed and granted summary judgment to Evans.

Six months later, Brownfield moved for reconsideration, but the district court denied that motion for failure to comply with Fed.R.Civ.P. 60(b). I believe the district court's rulings were correct.

## II.

### A.

As the majority appears to conclude, Brownfield does not get far with his argument that he made no promise to personally repay Evans at all. Each of the six loans was evidenced by a document titled "Promissory Note" and executed by Brownfield. Each also states that Brownfield "borrowed" the amount at issue from Evans and that the amount "is to be repaid." Brownfield does not purport to have executed the notes on behalf of any other party. Therefore, Brownfield personally promised to repay Evans.

### B.

The somewhat more difficult question is whether Brownfield's promise was subject to a condition precedent that was never satisfied, in which case the obligation to pay never arose and the notes are not payable on demand. *See* Wash. Rev.Code § 62A.3–108(a). Contrary to the majority's view, it seems clear to me that the notes can be read in two ways. On the one hand, Brownfield may have promised to repay if and only if Walla Walla Keystone became profitable or the parties reached another agreement to repay. On the other, Brownfield may have promised to repay Evans unconditionally, and referred to profits from Walla Walla Keystone only as a permissible *source* of funds. The second interpretation would let Evans, the CEO of Walla Walla Keystone, avoid the exercise of distributing profits to Brownfield and then waiting for Brownfield to hand them back to him.

Washington case law explains how to resolve this ambiguity. In *Vogt v. Hovander,* 27 Wash.App. 168, 616 P.2d 660 (1979), the court found that a clause providing "Money is to come from the cottage proceeds" was ambiguous and, in the absence of extrinsic evidence that the parties intended to create a condition precedent to payment, "doubt is resolved in favor of the creation of a promise." *Id.* at 661, 666.[1] The *Vogt* court referred to this question as a "question of fact." *See id.* Of course, it is well settled that a question of fact may be resolved as a matter of law on a summery judgment motion, when the non-moving party fails to introduce evidence establishing a genuine issue of material fact for trial. *See* Fed.R.Civ.P. 56; *Ek v. Herrington,* 939 F.2d 839, 843 (9th Cir.1991). So, the question here is whether any extrinsic evidence reasonably indicates that the parties intended the promise to pay would be conditional.

I do not believe it does and, in fact, all indications are that the promise to pay was *un* conditional. First, a document titled "2001 Annual Report of Members of Walla Walla Keystone, LLC," which is signed by Schweitzer, provides as follows:

> All three of the members agreed that Bob N. Evans and Kurt J. Schweitzer would personally loan to William G. Brownfield the funds necessary to make contributions to the company during the 2001 business year and for similar contributions in future years. Said personal loans will be repaid to Bob N. Evans and Kurt J. Schweitzer out of the profits of the company; *however, if the company does not generate sufficient profits to repay said personal loans then the parties will make other arrangements for the repayment of said loans.*

(emphasis added). This certainly sheds light on the intent of the promissory notes: it indicates that the obligations would be personal, not continent on the existence of profits.[2]

Second, the July 1, 2003 employment agreement between Brownfield and Keystone Fruit Marketing provided that Brownfield would "begin to repay the Walla Walla loans to [Evans] and [Schweitzer] at the minimum rate of at least $2,000 per month until interest and principal are paid in full—as agreed upon in separate documents." The "separate documents" apparently refer to the promissory notes, and Brownfield does not argue otherwise. Moreover, Brownfield does not dispute that he actually made partial payments to Evans even though Walla Walla Keystone was not profitable. I cannot see how this could suggest that Brownfield intended a condition precedent in his promissory notes. If anything, it indicates the opposite.[3]

---

1. I am unpersuaded that *Vogt* is distinguishable on the basis that it did not address the UCC. Under both the UCC and Washington common law, the result turned on *whether* the parties agreed to a condition precedent. *Vogt* explains how to answer this question. I see nothing in the UCC that is different.

2. The district court referred to the Annual Report as minutes of a meeting, but actually it is *"in lieu of* minutes of an annual meeting." (emphasis added). This distinction is important. In support of his motion for reconsideration of the district court's summary judgment order, Brownfield declared that he had "never attended any meeting." Brownfield's declaration does not undermine the authenticity of the Annual Report, however, because the Report never suggests that a meeting occurred. In any event, Brownfield's declaration was part of his motion for reconsideration, which the district court rejected for failure to comply with Fed.R.Civ.P. 60(b). Brownfield has waived any argument that this ruling was in error.

3. The majority argues that the July 1, 2003, agreement providing for minimum payments did not "transform" the promissory notes from conditional to unconditional promises.

By contrast, Brownfield points to no relevant evidence suggesting a condition precedent. He purports to create an issue of fact solely by citing affidavits where he averred that he never intended to create a personal liability: "I never promised to pay the plaintiff anything" and "I never agreed to pay any personal funds to satisfy the loans of Bob Evans." These statements are unhelpful for two reasons. First, they amount to conclusions of law, which cannot defeat summary judgment. *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir.1997) ("conclusory allegations … without factual support, are insufficient to defeat summary judgment"); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Second, and even more importantly, post-hoc statements of a promisor's subjective intent are not permissible extrinsic evidence. *See, e.g., Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wash.2d 939, 640 P.2d 1051, 1054 (1982) ("[T]he unexpressed subjective intent of either party is irrelevant."); *cf. Save Columbia CU Comm. v. Columbia Commty. Credit Union*, 134 Wash.App. 175, 139 P.3d 386 (2006) (describing permissible extrinsic evidence as "the circumstances surrounding contract formation, the subsequent acts and conduct of the parties, and the reasonableness of the parties' respective interpretations"). Like most jurisdictions, Washington follows the objective manifestation theory of contracts, which looks to "the outward manifestation of as-

sent made by each party to the other." *City of Everett v. Sumstad's Estate*, 95 Wash.2d 853, 631 P.2d 366, 367 (1981). Therefore, even taking Brownfield's statements in the light most favorable to him, he fails to establish that summary judgment was improper.[4] *See id.* ("If … it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.").

The majority's reasoning otherwise is puzzling. It fails to explain what extrinsic evidence suggests that the parties intended a condition precedent. True, the parties' course of dealing is not necessarily dispositive of their intent. But it need not be. Even if there is no extrinsic evidence compelling the conclusion that the parties intended an *un*conditional promise, in the absence of extrinsic evidence that a *condition* was intended, the contract must be construed not to include one. *See Vogt,* 616 P.2d at 666.

The majority may believe that the parties intended a "sweat equity" arrangement. This would be pure speculation. The only evidence even remotely on point is the fact that Brownfield was both an owner and an employee of Walla Walla Keystone. This does not reasonably suggest that Brownfield would pay for his share of the firm solely with his own time and labor. To the contrary, the notes themselves and other extrinsic evidence indicate that Brownfield was to provide cash, which he procured through a loan

---

This misses the point. The subsequent agreement is relevant, if at all, to help interpret the ambiguity in the notes.

4. Brownfield also appears to raise a red herring with his argument that the notes are not

"negotiable instruments." The status of the note as negotiable is irrelevant here, since Evans has not transferred the paper to a third party. *See Vogt,* 616 P.2d at 666 n. 2.

from Evans. Notably, Brownfield's substantial assets and income distinguish this from an ordinary sweat equity case, where an employee with expertise could not be expected to buy in with cash. More importantly, Brownfield does not contend this was a sweat equity arrangement, so this theory could not defeat summary judgment.

### III.

The majority suggests that Brownfield could win at trial by testifying that he did not intend an unconditional promise. The district court correctly held otherwise. I would affirm this decision and, therefore, respectfully, dissent.